Ben **MANUEL**, Plaintiff,

v.

**INTERNATIONAL HARVESTER COMPANY, Martin Tretheway, and W. Grant Chandler, Defendants.**

No. 79 C 1772.

United States District Court, N. D. of Illinois, E. D.

July 16, 1980.

Perry L. Fuller, William J. Holloway, Michael J. Leech, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for plaintiff.

Steven D. McCormick, Michael T. Hannafan, Kirkland & Ellis, Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff, a black male, was hired as Supervisor, Equal Opportunity, by defendant International Harvester Company ("Harvester") in May, 1977. He worked in that capacity at Harvester until June, 1978, when he was terminated during a company-wide reduction in force. Plaintiff, believing his discharge to be racially discriminatory, pursued his various administrative remedies. After receiving a Notice of Right to Sue from the Equal Employment Opportunity Commission dated February 14, 1979, he filed this action.

In his twelve-count complaint, plaintiff advances a number of legal theories upon which relief may be premised. Five of the counts (I, II, VII, VIII, X) allege racial discrimination in violation of Title VII, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and Executive Order 11246. The remaining counts, before this Court under the doctrine of pendent jurisdiction, seek recovery under Illinois tort and contract theories as well as Illinois antidiscrimination law. This case now is before the Court on defendants' motions for judgment on the pleadings as to seven counts of the complaint, and to amend the answer to add a third affirmative defense.

I. *Judgment on the Pleadings*[1]

A. Counts IX–X

Counts IX and X of the complaint are based on Executive Order 11246. Count X seeks damages for violation of 11246 under a theory of implied federal right of action, whereas Count IX alleges that plaintiff may sue under state law as a third-party beneficiary of the 11246 requirements incorporated in contacts between Harvester and the federal government.

Defendants contend that Count X must be dismissed for the reason that 11246 does not give rise to an implied right of action. This Court agrees. The Seventh Circuit has so held, *Cohen v. Illinois Institute of Technology*, 524 F.2d 818, 822 n.4 (7th Cir. 1975), *cert. denied*, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976), as has virtually every federal court to consider the issue.[2] Plaintiff's lengthy discussion on the Supreme Court's implication of a private right of action in *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), has not persuaded the Court that a different result now should obtain. *Cannon* clearly was not the Supreme Court's last word on implied private rights of action. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Reddington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). As this Court has observed, *Transamerica* and *Touche Ross* have established congressional intent as the pivotal factor in determining the existence of an implied private right of action. *Stone v. Saxon & Windsor Group, Ltd.*, 485 F.Supp. 1212 (N.D.Ill.1980). In examining the administrative scheme of enforcement, the language of the executive order, and legislative history of related civil rights provisions, the Court can find no evidence of a congressional intent to create a private right of action directly under 11246.[3] Thus, even were this Court writing

---

1. In considering a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), the Court must view the facts presented by the pleadings in a manner favorable to the non moving party. *See Smith v. Lakeside Foods, Inc.*, 449 F.Supp. 171, 172 (N.D.Ill.1978); Wright & Miller, Federal Practice and Procedure: Civil § 1368 at 690–691.

2. *See e. g. Weise v. Syracuse*, 522 F.2d 397, 411 n.23 (2d Cir. 1975); *Droughn v. FMC Corp.*, 74 F.R.D. 639, 644 (E.D.Pa.1977); *Jackson v. University of Pittsburg*, 405 F.Supp. 607, 611 (W.D. Pa.1975); *Traylor v. Safeway Stores*, 402 F.Supp. 871, 875 (N.D.Cal.1975); *Rackin v.*

*University of Pennsylvania*, 396 F.Supp. 992, 1008 (E.D.Pa.1974). *Contra, Lewis v. Western Airlines*, 379 F.Supp. 684, 689 (N.D.Cal.1974).

3. Plaintiff cites a number of executive statements which he believes indicate an intent to allow private enforcement of 11246. Assuming these statements so suggest, however, the critical inquiry is *congressional* rather than executive intent. As the court recognized in *Stevens v. Carey*, 483 F.2d 188, 191 (7th Cir. 1973), federal court jurisdiction cannot stem from executive orders alone, but must arise from some source of statutory authorization.

on a clean slate, it would not construe 11246 as providing for an implied right of action.

Defendants' position with respect to the third–party beneficiary theory contained in Count IX is derivative of their argument as to Count X. Defendants observe that one reason federal courts have declined to read into 11246 an implied right of action is that such an action might disrupt the administrative procedures established for the enforcement of that executive order. Defendants contend that this disruption would be even greater if state law contract actions were permitted as a means of enforcement of 11246.

The judicial refusal to imply a private right of action under 11246, however, does not suggest that private enforcement of that executive order never may be obtained through a lawsuit. Indeed, in *Jones v. Local 520, International Union of Operating Engineers*, 603 F.2d 664 (7th Cir. 1979), *cert. denied*, 444 U.S. 1017, 100 S.Ct. 669, 62 L.Ed.2d 647 (1980), the Seventh Circuit held that an employee could sue under section 1981 to enforce an 11246 contract establishing preferential minority hiring:

> In our view, the agreements create third party beneficiary rights in the white and black operating engineers who stand to benefit from the operation of the referral plan.

603 F.2d at 665. The court found that so long as the complaint stated the essential elements of a section 1981 claim, an employee could maintain an action to enforce 11246. Thus, it is evident that judicial enforcement of 11246 will not necessarily contravene the administrative machinery.

Defendants' second argument—that application of state law principles to enforce 11246 would disrupt unduly the administrative scheme—also is unavailing. In *Miree v. DeKalb County, Ga.*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977), the Supreme Court permitted plaintiff to sue under a contract theory for alleged breach by defendant of a Federal Aviation Administration agreement. In rejecting the argument that the overriding federal interest required application of a uniform federal common law, the Court stated:

> The operations of the United States in connection with FAA grants such as these are undoubtedly of considerable magnitude. However, we see no reason for concluding that these operations would be burdened or subjected to uncertainty by variant state–law interpretations regarding whether those with whom the United States contracts might be sued by third party beneficiaries to the contracts.

433 U.S. at 30, 97 S.Ct. at 2494. The Court also observed that Congress' failure to indicate an express intent to displace state law further supported the conclusion that application of state law principles would not be in derogation of federal policy. *Id.* at 32, 97 S.Ct. at 2495.

▋▋ Similarly, this Court does not believe that state law actions will create uncertainty as to the obligations of those who are subject to the important policies of 11246 by virtue of their contracting with the federal government. Nor has Congress exercised its authority to render state law inapplicable to actions involving 11246. Thus, under the authority of *Miree*, the Court finds no bar to plaintiff's state law claim based on his rights as a third–party beneficiary to the 11246 contract.[4] For this reason, the motion for judgment on the pleadings is denied as to Count IX.

## B. Counts III–IV

▋ In Counts III and IV, plaintiff seeks recovery for alleged discrimination under the Illinois Fair Employment Practice Act ("FEPA").[5] Defendants, however, correct-

---

4. Under Illinois law, one may claim under a contract as a third–party beneficiary if the benefit under the contract is direct to him rather than incidental. *Gothberg v. Nemerovski*, 58 Ill.App.2d 372, 208 N.E.2d 12, 19 (1st Dist. 1965). Defendants do not contend that plain-

tiff has failed to allege the essential elements of this claim.

5. Ill.Ann.Stat. ch. 48, § 851 *et seq.* This provision was repealed as of July 1, 1980, and replaced by the Illinois Human Rights Act, Ill. Ann.Stat. ch. 68, § 1–101 *et seq.*

ly point out that plaintiff may not maintain his action against them directly under the FEPA. Under the enforcement scheme established by the FEPA, any claim within the coverage of the Act must be filed with the Fair Employment Practices Commission ("Commission"). Ill.Ann.Stat. ch. 48, § 858(a). Thereafter, the Commission investigates the complaint to determine if there is substantial evidence of a violation. If so, and if conciliation of the complaint proves unsuccessful, the Commission issues a complaint. § 858.01(a). After a hearing and recommended order filed by a hearing examiner, the Commission upon review adopts all orders not contrary to the manifest weight of the evidence. § 858.02(d). Under section 860 of the FEPA, either an employer or employee may obtain judicial review of Commission findings. Moreover, section 861 authorizes the Commission to sue in state court to enforce its orders. The only other authorization of state court jurisdiction is found in section 858.01a, which permits an employee to sue an employer on claims filed with the Commission prior to March 30, 1978, so long as the claims have not been settled or have not been the subject of a complaint issued by the Commission.

Inasmuch as plaintiff first filed claims against defendants in May, 1978, he does not qualify for the limited right of action against an employer conferred by section 858.01a. Plaintiff appears to suggest that because his claims were filed only two months after the March 30 deadline, his action should be permitted. However, whether plaintiff failed to meet the March 30 cutoff by two days, two months, or two years is irrelevant. The Illinois legislature has established a clear limit on actions by employees against employers, and this Court is bound to respect that limit.[6]

Plaintiff further suggests that his private action against defendants is sanctioned by

the reasoning in *Klein v. Fair Employment Practices Commission*, 31 Ill.App.3d 473, 334 N.E.2d 370, 374 (1st Dist. 1975). All that *Klein* held, however, is that judicial review under section 860 is available where the Commission dismisses a claim without issuing a complaint. Neither the holding nor the reasoning of that opinion suggest that employees may avoid the plain limitation contained in section 858.01a. Finally, plaintiff argues that these counts should not be dismissed solely because there is no Commission record upon which to base section 860 review. The problem, however, stems not from the absence of a record, but rather more basically from plaintiff's statutory inability to bring suit against his employer. Accordingly, the Court grants defendants' motion for judgment on the pleadings as to Counts III and IV.

### C. Counts VIII, XI

In Count VIII, plaintiff seeks to impose individual liability on defendants Chandler and Tretheway under section 1981 for their role in his termination. Count XI seeks damages against these same two defendants on the state law theory of interference with a contractual relationship.

As to Count VIII, defendants contend that individual employees of a corporate defendant cannot be held liable under section 1981 for the same acts that allegedly give rise to corporate liability. Defendants argue that such "double liability" should not be countenanced under section 1981. In general, however, it is well established that

[a] director, officer, or agent of a corporation is liable in damages for injuries suffered by third persons because of his torts, regardless of whether he acted on his own account or on behalf of the corporation and regardless of whether or not the corporation is also liable.

I.L.P. Corporations § 352 at 509; *Murphy Tugboat v. Shipowners & Merchants Towboat*, 467 F.Supp. 841, 852 (N.D.Cal.1979).

6. The Court observes that the new Illinois statute supplanting the FEPA is to the same effect. *See* Ill.Ann.Stat. ch. 68, § 8 111(D) ("Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act.")

Indeed, the Supreme Court in *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 236–237, 90 S.Ct. 400, 404, 24 L.Ed.2d 386 (1969), applied this principle to litigation under section 1982, the companion statute to section 1981. There, the Court permitted plaintiffs to sue under section 1982 a recreational corporation as well as its directors for a refusal to permit the assignment of membership rights to a black lessee. Subsequently, a number of courts have permitted suits under section 1981 against both corporations and corporate directors or officers who authorize, direct, or participate in the alleged discriminatory conduct. *Tillman v. Wheaton–Haven Recreation Ass'n, Inc.*, 517 F.2d 1141, 1146 (4th Cir. 1975); *Faraca v. Clements*, 506 F.2d 956, 959 (5th Cir.), *cert. denied*, 422 U.S. 1006, 95 S.Ct. 2627, 45 L.Ed.2d 669 (1975); *Garcia v. Rush–Presbyterian St. Luke's Medical Center*, 80 F.R.D. 254, 266–267 (N.D.Ill.1978).

■ In Count VIII, paragraph 89, plaintiff alleges that defendants Chandler and Tretheway "were the individuals who determined that plaintiff would be terminated from his position with Harvester." The remainder of the count describes the elements that allegedly went into the decision to terminate plaintiff. The Court believes these allegations to be sufficient to state a claim against the individual defendants under section 1981.[7] Moreover, defendants' argument with respect to Count XI is premised on the assumption that Count VIII fails to state a claim under section 1981, thereby robbing the Court of pendent party jurisdiction over them. Inasmuch as the Court has denied the motion for judgment on the pleadings as to Count VIII, it denied the motion as to Count XI as well.

### D. Count XII

Count XII alleges that in terminating plaintiff, the defendants breached the duty of good faith and fair dealing implicit in all contracts. *See* I.L.P. Contracts § 217 at 380. Defendants submit that they are entitled to judgment on the pleadings on the ground that plaintiff was an employee at will and thus could be terminated at any time for any reason.

Plaintiff does not dispute that he was hired by Harvester as an employee at will rather than for a specific term. Under Illinois law,

> [s]uch an employment relationship is intrinsically a very fragile thing, which either party may end with or without cause. (Cites omitted). The termination, then, may permissibly be for a good reason, a bad reason, or no reason at all. A court may be sympathetic to hardship inflicted on a discharged employee and unsympathetic to "bad" reasons motivating a discharge, but it is not the judicial business to rewrite a fragile employment contract to which the parties have agreed.

*Loucks v. Star City Glass Co.*, 551 F.2d 745, 747 (7th Cir. 1977). *See also Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 566, 384 N.E.2d 353, 360 (1978); *Roemer v. Zurich Insurance Co.*, 25 Ill.App.3d 606, 323 N.E.2d 582, 585–586 (1st Dist. 1975). This absolute right may be limited by public policy, as in Illinois, which prohibits even employees at will from being terminated for certain impermissible reasons such as invidious discrimination. This limitation, however, arises not from the employment relationship itself, but from the particular statute. Thus, in *Kelsay*, the Illinois Supreme Court observed that the Workman's Compensation Act limited an employer's right to terminate with impunity an employee at will who filed a claim under the Act. The court observed that if employers could exercise their "otherwise absolute

---

7. The cases defendants cite to the contrary are not persuasive. In *Willis v. Safeway Stores, Inc.*, 17 FEP Cases 102 (N.D.Tex.1978), the court expressly noted that the individual defendant sued was not an officer or director of the defendant corporation. In *Leslie v. Philadelphia 1976 Bicentennial Corp.*, 332 F.Supp. 83 (E.D.Pa.1971), the court, without citation to *Sullivan*, concluded that no section 1981 liability could attach to individuals who had not assumed any personal obligations with respect to plaintiff's employment with the corporation. That decision, however, relied heavily on Pennsylvania corporate law, which differs from that in Illinois and that which is reflected in *Sullivan* and its progeny.

power to terminate an employee at will," employers could pressure employees to forego their exclusive right to recovery under the Act by threatening them with discharge. 384 N.E.2d at 357.

■ As is evident from the multi–count complaint in this case, plaintiff has a full panoply of federal and state law remedies from which to choose in seeking redress against defendants. The Court need not impose a limitation on the employment at will relationship in order to provide another. Indeed, the Illinois courts never have relied upon this duty to limit the right of an employer to terminate an employment at will relationship. *Criscione v. Sears, Roebuck & Co.*, 66 Ill.App.3d 664, 23 Ill.Dec. 445, 448–449, 384 N.E.2d 91, 94- 95 (1st Dist. 1978); *Stevenson v. ITT Harper, Inc.*, 51 Ill.App.3d 568, 9 Ill.Dec. 304, 310, 366 N.E.2d 561, 567 (1st Dist. 1977). Rather, these decisions discussed the duty of good faith and fair dealing only as a means for recovery of damages where an employee at will is discharged so that the employer may avoid payment of benefits due under a contractual agreement. The court in *Criscione*, for example, observed that limiting an employer's right to discharge an employee at will

> would be to destroy the mutuality of obligation that exists in an employment at will relationship. An employee at will may quit his employment for any reason at any time and is not bound to make his decision on the basis of whether or not it is a good business decision. The obligation of the employer should be no more nor less.

384 N.E.2d at 95.

■ Thus, Insofar as Count XII seeks damages for plaintiff's discharge, defendants are entitled to judgment on the pleadings. However, a fair reading of Count XII reveals that plaintiff also alleges that defendants discharged him so as to avoid payment of a bonus and raise to which he was entitled by contract. *See* Count XII, Paragraphs 138(a), 139(a). This is sufficient to state a claim for relief under Illinois law. Therefore, the motion for judgment on the pleadings is denied as to this allegation in Count XII.

## II. *Amendment to the Answer*

Defendants' motion to amend their answer is based on the discovery of evidence that plaintiff allegedly misrepresented the salaries he received in his past employment positions. Their proposed third affirmative defense alleges that plaintiff's damage claims are barred because he secured the employment relationship by fraudulent means.

■ Under Fed.R.Civ.P. 15(a), leave of the court to amend a pleading "shall be freely given when justice so requires." *See Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962); *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1334 (7th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). Such leave, however, is inappropriate where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182, 83 S.Ct. at 230; *Mertens v. Hummel*, 587 F.2d 862, 865 (7th Cir. 1978). The determination as to whether leave to amend should be granted is committed to the discretion of the trial court. *Mertens, id.*

■ Plaintiff argues that due to defendants' delay in raising this motion, he will be prejudiced if at this time the Court permits the requested amendment. However, the Court does not believe that defendants delay in seeking to amend their answer can be characterized as undue, coming as it did little more than one month after the close of discovery and prior to the filing of the final pretrial order. Moreover, the Court does not believe that plaintiff will be prejudiced due to an inability to conduct further discovery. First, plaintiff was aware that defendants were conducting discovery in this area. Thus, he should not be surprised that defendants now are raising this issue.

Second, to the extent that further discovery on this defense is necessary, the Court believes that a reopening of discovery for 45 days for this limited purpose will provide plaintiff with an adequate opportunity to address this defense.

Plaintiff also suggests that the proposed amendment should be denied because it is insufficient as a matter of law. As *Foman* and *Mertens* recognize, futility is a basis for denying a motion to amend. Here, however, the Court is far from convinced that the matters defendants seek to raise by their proposed third affirmative defense are without merit. If defendants can prove that plaintiff obtained his job through fraudulent representations and that this defense is not merely a pretext for discrimination, *Williams v. Boorstin*, 451 F.Supp. 1117, 1122 (D.D.C.1978), they may escape liability. Moreover, fraudulent representations by plaintiff, if proven, at the very least will be relevant to the issue of damages. *Williams, id.* at 1126–1127. Thus, the Court cannot say that the amendment should be denied as futile.

Accordingly, the motion for judgment on the pleadings is granted as to Counts III, IV, and X in their entirety. Judgment on the pleadings also is granted as to that part of Count XII which seeks damages for discharge. The motion is denied as to the remainder of Count XII, as well as to Counts VIII, IX, and XI. In addition, the defendants' motion to amend the answer by adding a third affirmative defense is granted. Discovery will be opened for 45 days, limited to the issues raised by the amendment. Thereafter, the parties will have ten days to amend the final pretrial order. This cause will be placed on the Court's status call for October 10, 1980, at 10:00 a. m. It is so ordered.