**Renee CURTIS, Plaintiff,**

v.

**CONTINENTAL ILLINOIS NATIONAL BANK and Robert Cothard, Defendants.**

**No. 82 C 4413.**

United States District Court, N.D. Illinois, E.D.

Aug. 17, 1983.

Gregory A. Stayart, Sullivan & Associates, Ltd., Chicago, Ill., for plaintiff.

James W. Gladden, Jr., Judith M. Janssen, Mayer, Brown & Platt, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

Plaintiff has filed a complaint against Defendants Continental Illinois National Bank and Trust Company of Chicago ("Continental") and Robert Cothard, an employee of Continental and plaintiff's former supervisor. In Part I of the complaint plaintiff charges Continental with 1) subjecting plaintiff to sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII); 2) committing an undefined "intentional tort" as to plaintiff; and, 3) discriminating against plaintiff in violation of Article I, § 17 of the Illinois Constitution. In Part II, plaintiff makes two non-federal claims against Defendant Cothard, who is charged with 1) assault and battery; and, 2) intentional infliction of emotional distress. Plaintiff also claims in her memorandum that her complaint includes a Title VII claim against defendant Cothard (Plaintiff's Brief at 10), although this is by no means clear from the pleading submitted to the court.

Defendants have moved to dismiss the "pendant state law claims" against Continental and the entire count dealing with Mr. Cothard. The motion to dismiss is granted in its entirety.

### I. *The "State Law Claims" Against Continental*

Plaintiff's claims against Continental are divided into three sections entitled

"Count[s]" I, II, and III.[1] The bulk of the complaint against this defendant contains allegations purporting to state a claim for violations of Title VII. Plaintiff then asserts what is labeled "Count II" (as to Continental, see n. 1) claiming that "[t]he described conduct of Continental Illinois Bank was intentional, within the meaning of 42 U.S.C. § 2000e–5(9)." Although "Count II" is subtitled "Intentional Tort," the Court fails to see how this portion of the complaint in any way can be said to state a separate and independent state law tort claim. Rather, by its clear wording, "Count II" is an amplification of plaintiff's Title VII claim and will be treated as such.

■ Plaintiff next pleads "Count III," which contains a third claim against Continental for alleged violations of the Illinois Constitution, specifically Art. I, § 17. Although plaintiff purports to state a cause of action directly under the Illinois Constitution, that attempt must be denied for two reasons.

First, this Court is extremely reluctant to construe Art. I, § 17 as permitting a direct private right of action for damages arising out of alleged employment discrimination. No case can be located which establishes such a right, and it is the Court's belief that such complicated and important issues of state law are best left for the State courts. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Secondly, even if this Court were inclined to allow such a suit, analogous federal case law would militate strongly against it. Article I, § 17 of the Illinois Constitution is implemented by a comprehensive Illinois statute entitled the Illinois Human Rights Act. Ill.Rev.Stat., ch. 68, ¶ 1–101 *et seq.,* (1981) (the "Act"). In a similar context, the U.S. Supreme Court has ruled that where an employee is entitled to the benefits of an elaborate administrative scheme designed to protect individuals from arbitrary actions

by their supervisors, it is inappropriate to thwart that scheme by permitting a direct cause of action for damages based directly on the Constitution. *Bush v. Lucas,* —— U.S. ——, 103 S.Ct. 3081, 76 L.Ed.2d —— (1983), *aff'g.,* 647 F.2d 573 (5th Cir.1981). By analogy, where there exists a comprehensive legislative scheme, like the Illinois Human Rights Act, which is specifically designed to implement Art. I, § 17 of the Illinois Constitution, *see* Ill.Rev.Stat. ch. 68, ¶ 1–102(C), it would be improper to permit a direct suit which bypasses the procedural plan established by the legislature, and instead looks directly to the constitution.

In sum, in light of both 1) this Court's hesitancy to permit a direct suit for damages under the Illinois Constitution, and 2) the fact that even if the Court were inclined to permit such a suit, that inclination would be countered by the availability to plaintiff of a comprehensive statutory remedy for her claims, plaintiff's request for damages under the Illinois Constitution must be rejected, and that portion of the complaint is dismissed.

■ One final note is in order. Plaintiff has not indicated that she has made any attempt to utilize the statutory procedures provided by the Illinois Human Rights Act. Therefore, even if she wished to amend her complaint to plead a claim pursuant to that Act, this Court would be presented with the question of whether that claim could go forward despite plaintiff's failure to exhaust her Illinois administrative remedies. Upon review of the Act, it is the Court's belief that plaintiff's failure to exhaust would be fatal to any claim brought under the Act at this time.

It is clear that the statutory scheme of the Illinois Human Rights Act contemplates that a complainant will exhaust the administrative procedures established by the act prior to seeking judicial review. Paragraphs 8–101 through 8–110 detail the powers, duties, and procedures of the Illinois

---

1. Plaintiff's complaint actually contains two sections labeled "Count I" and two labeled "Count II." There is only one "Count III." This is because of the complaint's somewhat peculiar format. It is divided into two portions, the first dealing solely with Continental, and the second dealing solely with Cothard.

Human Rights Commission ("the Commission"), the administrative body primarily responsible for adjudicating alleged violations of the Act. Paragraph 8–111 provides for judicial review of those Commission orders with which the parties disagree and for judicial enforcement of orders with which the parties have failed to comply. It is beyond dispute that this statutory section reflects the legislature's intention that the administrative body review the complaint brought by an aggrieved party or the Department of Human Rights *before* that complaint is considered by the Court. For example, the statute clearly provides for "judicial *review* of an order of the Commission." Ill.Rev.Stat. ch. 68, ¶ 8–111(A)(1)(1981) (emphasis added). Such review must be sought by application to the Commission. *Id.* There is no provision for initial consideration by a court. Furthermore, ¶ 8–111(A)(2) provides that "[i]n any proceeding brought for judicial review, the Commission's findings of fact shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." Obviously, this provision contemplates collateral review of the Commission's action, rather than fact-finding on the part of the Court. Finally, ¶ 8–111(B) provides for judicial enforcement of Commission orders in the event that those orders are not voluntarily followed. This adds additional support to the conclusion that the legislature's goal was that administrative proceedings would be fully exhausted prior to the institution of court action.

In light of the foregoing, plaintiff's sole remaining claim against Continental is its Title VII claim. "Counts" II and III of the portion of plaintiff's complaint which is addressed to this defendant are therefore dismissed in their entirety.

## II. *Claims Against Robert Cothard*

As has already been stated, the charges made against Mr. Cothard are state law claims for damages based on assault and battery ("Count I") [2] and intentional infliction of emotional distress ("Count II").

Plaintiff states in her memorandum that the complaint also makes a Title VII claim against Cothard (Plaintiff's Brief at 10), although the complaint's organization virtually hides that claim from the view of even the most careful observer. Furthermore, at one point in plaintiff's brief she contradicts her later assertion that a Title VII claim is included against Cothard by stating:

> All claims in plaintiff's complaint arise from her employment and defendants' subsequent harassment of her. Sexual harassment and retaliation is alleged against plaintiff's employer. Assault and battery and intentional infliction of emotional distress is alleged against plaintiff's supervisor.

Plaintiff's Brief at 4.

■ This morass, although confusing, in no way affects this Court's decision. Whether or not plaintiff desired to assert a Title VII claim against Cothard, this Court holds that such a claim *cannot* be made at this time. And, for the reasons that follow, dismissal of plaintiff's federal claim requires that plaintiff's pendant claims also be dismissed.

It is well settled that a non-federal claim is an insufficient basis for joinder of a party "over whom no independent federal jurisdiction exists." *Aldinger v. Howard,* 427 U.S. 1, 9, 96 S.Ct. 2413, 2418, 49 L.Ed.2d 276 (1976). This is the case even though the claim is "derived from the 'common nucleus of operative fact' giving rise to the dispute between the parties to the federal claim." *Id.*

In this case there exists no independent basis for federal jurisdiction over defendant Cothard. Cothard was not a respondent in plaintiff's charge before the EEOC, a normal prerequisite to filing suit in federal court on a Title VII claim. 42 U.S.C. § 2000e–5(f)(1). Although there are situations where this requirement will not be strictly enforced, *Maxey v. Thompson,* 680 F.2d 524 (7th Cir.1982); *Eggleston v. Chicago Journeymen Plumbers, etc.,* 657 F.2d 890, 905–908 (7th Cir.1981), this is not such

2. *See* n. 1, *supra.*

a case. Mr. Cothard did not appear in the EEOC fact-finding conference, and has been given no opportunity to attempt to deal administratively with the charges against him. The conciliation process is a crucial element of the congressional scheme set up by Title VII. To allow a claim against Cothard to stand at this point would be to thwart that scheme in a fundamental manner.

Furthermore, it would be improper to hold that, on the facts of this case plaintiff's failure to name Cothard was of no serious consequence, because he is, in some sense, "substantially identical" to the respondent appearing in the EEOC proceeding. Cothard is a first-level supervisor in a single area of Continental Bank's Security Division. It can hardly be said that while Cothard was in this capacity, service of an EEOC charge upon the Bank's Legal or Personnel Departments would put him on notice that he faced a possible federal lawsuit and needed to consider whether to enter into a settlement of plaintiff's EEOC charges. Thus, this Court declines to allow plaintiff's Title VII claim, if it exists, to proceed.

In light of the foregoing, plaintiff's pendant claims against Cothard must fail as well. As has already been stated, state law claims alone cannot support pendant party jurisdiction. Here, where no independent federal jurisdiction exists, that portion of the complaint claiming against and seeking damages from defendant Cothard must be dismissed in its entirety. *See also Dickey v. Greene,* 710 F.2d 1003, 1005 (4th Cir.1983); *Kiss v. Tamarac Utilities, Inc.,* 463 F.Supp. 951 (S.D.Fla.1978).

### III. *Conclusion*

In light of the foregoing, the trial of this cause will deal solely with plaintiff's Title VII claim against Continental Bank.

IT IS SO ORDERED.