MANGAL THAKKAR, Plaintiff-Appellant, *v.* WILSON ENTERPRISES, INC., Defendant-Appellee.

First District (5th Division)   No. 82—1686

Opinion filed December 23, 1983.

Roger Baldwin Foundation of ACLU, Inc., of Chicago (Roslyn C. Lieb, Harvey Grossman, and Susan Bandes, of counsel), for appellant.

Lawrence I. Kipperman, James S. Whitehead, and David F. Johnson, all of Sidley & Austin, of Chicago, for appellee.

PRESIDING JUSTICE WILSON delivered the opinion of the court:

This is an appeal from the dismissal of an action brought by plaintiff in the circuit court of Cook County against defendant alleging employment discrimination on the basis of plaintiff's national origin in violation of the Illinois Bill of Rights, article I, section 17 of the Illinois State Constitution. Ill. Const. 1970, art. I, sec. 17.

Plaintiff Mangal Thakkar is an East Indian who has resided in the United States since 1972. In 1977 he was hired by defendant Wilson

Enterprises, Inc., as a general carpenter.[1] Following a job-related injury in February 1978, which resulted in an 11-week absence from work and a change in job assignment when he returned, plaintiff's salary was decreased from $7.93 to $6.55 per hour. This amount was increased to $7.93 in October 1978 but a year later, in November 1979, his employment was terminated. Plaintiff filed a complaint of discrimination in the circuit court on November 3, 1980, which was dismissed pursuant to defendant's motion.

The court thereafter entered an order which stated that plaintiff had failed to comply with the statutory provisions of the Fair Employment Practices Act, that the Human Rights Act and the Fair Employment Practices Act constitute reasonable exemptions to section 17 of article 1 of the State Constitution and that the language of section 17 which refers to the "hiring and promotion practices of any employer" includes discharges and terminations of employment. This appeal followed the court's denial of plaintiff's petition to reconsider its order of dismissal.

OPINION

The controlling issue for our consideration is whether an aggrieved party may directly sue for discrimination in employment under article I, section 17 of the 1970 Illinois State Constitution without first exhausting the administrative remedies set forth in the Illinois Human Rights Act (HRA)[2] (Ill. Rev. Stat. 1981, ch. 68, par. 1—101 *et seq.*). Section 17 states that:

> "All persons shall have the right to be free from discrimination on the basis of race, color, creed, national ancestry and sex in the hiring and promotion practices of any employer or in the sale or rental of property.
>
> These rights are enforceable without action by the General Assembly, but the General Assembly by law may establish reasonable exemptions relating to these rights and provide additional remedies for their violation." Ill. Const. 1970, art. I, sec. 17.

---

[1]Plaintiff was a permanent resident when his employment began in February 1977.

[2]When plaintiff was discharged on November 2, 1979, the Fair Employment Practices Act (FEPA) was in effect. (Ill. Rev. Stat. 1979, ch. 48, par. 851 *et seq.*) This act was superseded by the Illinois Human Rights Act which became effective on July 1, 1980. (Ill. Rev. Stat. 1981, ch. 68, par. 1—101 *et seq.*) This successor act is a consolidation of numerous antidiscrimination statutes. Our holding today therefore applies to the FEPA as well as the HRA.

Plaintiff first contends that neither the Fair Employment Practices Act nor its successor, the Human Rights Act, comprise the "reasonable exemptions" referred to in section 17 since that section was enacted in 1970, nine years after the FEPA (1961). Thus, according to plaintiff, section 17 constitutes a second or alternative avenue to redress an employment discrimination dispute.[3] We disagree.

The question of whether an aggrieved party may bring a direct action for violation of a right protected by the FEPA was decided in Illinois on two occasions in 1980, the same year that plaintiff initiated the proceedings before use. In *Manuel v. International Harvester Co.* (N.D. Ill. 1980), 502 F. Supp. 45, the district court set forth the enforcement scheme of the FEPA and explained that any claim within the coverage of that act must be filed with the Fair Employment Practices Commission. (502 F. Supp. 45, 49.) The court further stated that following a hearing and recommended order filed by a hearing examiner, the Commission on review adopts all orders not contrary to the manifest weight of the evidence. Thereafter, either an employer or employee may obtain judicial review of the Commission's findings. The Commission may also sue in State court to enforce its order. 502 F. Supp. 45, 49.

The court concluded that the employee could not maintain a direct action against his former employer as it was the prerogative of the Fair Employment Practices Commission to determine whether a violation exists and to issue a complaint. 502 F. Supp. 45, 49.

The second case addressing this question was decided in November 1980, approximately four months following the *Manuel* decision. In *Beane v. Millers Mutual Insurance Association* (1980), 90 Ill. App. 3d 258, 412 N.E.2d 1124, the court ruled that because the appellant never presented his claim to the Fair Employment Practices Commission he had failed to exhaust his administrative remedies and could not bypass the statutory procedures of the Fair Employment Practices Act. 90 Ill. App. 3d 258, 261.

Although the plaintiffs in the foregoing cases did not contend, as plaintiff does here, that the FEPA provided an alternative vehicle to pursue a civil rights action, nonetheless the charge was made that a direct cause of action could be filed by an aggrieved employee and

---

[3]Plaintiff argues in his reply brief that his cause of action is solely based on a violation of section 17 and *not* the FEPA or HRA and that any attempt to address the issues raised in his appeal based on these acts would be in error. We cannot agree since, as explained in this opinion, the resolution of an alleged section 17 violation in employment by an employer who is not exempt from the provisions of the HRA requires the exhaustion of the administrative remedies set forth in that act.

that the act's statutory procedures could be bypassed. The courts in both cases ruled to the contrary. We are in full accord with these decisions and believe that a similar result is warranted in the case at bar.

A review of the detailed legislative scheme of the Human Rights Act persuasively suggests that the General Assembly intended for it to be the preemptive vehicle for the resolution of employment discrimination cases in Illinois. Indeed, the act itself states that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." (Ill. Rev. Stat. 1981, ch. 68, par. 8—111(D).) Moreover, the comprehensive remedial procedures of the act indicate the legislature's intent that the constitutional rights set forth in section 17 be harmonized with the act, which clearly states in its initial declaration of policy that "It is the public policy of this State: *** To secure and guarantee the rights established by Sections 17, 18 and 19 of Article I of the Illinois Constitution of 1970." Ill. Rev. Stat. 1981, ch. 68, par. 1—102(C).

Consistent with this analysis, it follows that the "reasonable exemptions relative to these rights" expressed in section 17 are also found at least in part, and as far as the present case is concerned, in the Illinois Human Rights Act. For example, article 2 of the act concerns employment; section 2—104 lists the exemptions thereunder. (A decision which specifically addressed the issue of exemptions under section 17 is *Davis v. Attic Club* (1977), 56 Ill. App. 3d 58, 70, 371 N.E.2d 903, in which the court held that a voluntary association such as a private club was exempt from section 17's prohibition against discrimination in the sale or rental of property. The court relied heavily on the Liquor Control Act for this exemption. Ill. Rev. Stat. 1977, ch. 43, par. 94 *et seq.*)

A court of review has the duty to construe a State constitution so as to effectuate the intent of its drafters (see *People ex rel. McDavid v. Barrett* (1939), 370 Ill. 478, 480, 19 N.E.2d 356), and when faced with a constitutional provision whose meaning is thought to be uncertain, the accepted practice for ascertaining such intent is to consult the debates of the relevant constitutional convention. *People ex rel. Keenan v. McGuane* (1958), 13 Ill. 2d 520, 527, 150 N.E.2d 168, *cert. denied* (1958), 358 U.S. 828, 3 L. Ed. 2d 67, 79 S. Ct. 46.

Our examination of the debates of the Sixth Illinois Constitutional Convention of 1969-1970 convinces us that the drafters intended that the "reasonable exemptions" referred to in section 17 would comprise statutory provisions enacted by the State legislature. In explaining the language of section 17, the Bill of Rights Committee (6 Record of

Proceedings, Sixth Illinois Constitutional Convention 68) made the following statement:

> "The Committee concluded that the right to freedom from discrimination should be subject to a legislative power to establish reasonable exemptions. The subject of discrimination in employment or housing on the basis of race, color, creed, national ancestry or sex has many different facets. This is evident from the numerous exceptions written into state and federal legislation forbidding discrimination in these areas.
>
> * * *
>
> Appropriate exceptions cannot readily be treated in a constitutional provision, but they can be provided by legislation. Consequently, the new section authorizes the General Assembly to 'establish reasonable exemptions' from the rights created in the section.
>
> Since the right is explicitly made 'enforceable without action by the General Assembly,' *an aggrieved person could have recourse to existing judicial or legislative remedies* for a violation of the right. The General Assembly is also authorized to prescribe additional remedies." (Emphasis added.)

■ Based on our interpretation of the foregoing statements along with the cases previously cited on this issue, we conclude that the Fair Employment Practices Act and its successor, the Human Rights Act, are "reasonable exemptions" as expressed in section 17.

Addressing plaintiff's second contention, we further conclude that the directives of the Human Rights Commission embodied in the act along with the act's extensive and detailed procedural scheme constitute "additional remedies" for the resolution of employment discrimination cases in this State.

Plaintiff's final contention on appeal is that the FEPA and the HRA are independent remedies for violations of the rights guaranteed by section 17 and that plaintiff's failure to comply with the provisions of those statutes cannot be a bar to a direct cause of action. Again, we disagree.

As we have previously explained, the statutory scheme of the HRA, which serves to protect and enforce the rights of section 17, effectively bars plaintiff from bringing a direct cause of action until the administrative procedures and remedies as set forth in the act have been exhausted.

We further note that a litigant under Federal law who seeks to redress an alleged violation of a civil right must also first exhaust all available administrative remedies prior to bringing a cause of action

in the district court. (*McKart v. United States* (1969), 395 U.S. 185, 23 L. Ed. 2d 194, 89 S. Ct. 1657; *Patterson v. General Motors Corp.* (7th Cir. 1980), 631 F.2d 476, *cert. denied* (1981), 451 U.S. 914, 68 L. Ed. 2d 304, 101 S. Ct. 1988.) Several policy reasons have been articulated to support this exhaustion requirement and are equally applicable to the facts before us: (1) the requirement avoids interruption of the administrative process; (2) it allows the involved agency to develop the necessary factual background upon which to base a decision; (3) it allows the agency to exercise its discretion or apply its particular expertise; (4) the exhaustion requirement serves to improve the efficiency of the administrative process; (5) it serves to conserve scarce judicial resources; (6) it gives the agency an opportunity to discovery and correct its own errors; and (7) it avoids the possibility that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures. *McKart v. United States* (1969), 395 U.S. 185, 193-95, 23 L. Ed. 2d 194, 203-04, 89 S. Ct. 1657, 1662-63.

The limitations, administrative procedures and remedies of the Human Rights Act and, of course, its predecessor, the Fair Employment Practices Act, are reasonable and were enacted with proper authority. In our judgment, relaxed requirements are neither necessary nor appropriate at this time. We therefore refuse to subvert the clearly articulated procedural scheme of the act. Indeed, the legislature's intent that the Act stand as the exclusive mechanism for the enforcement of rights guaranteed by section 17 is unambiguously stated in the title of the act, which says that its purpose is to prevent unlawful discrimination in employment "by authorizing the creation of a Department of Human Rights to enforce, and a Human Rights Commission to adjudicate, allegations of unlawful discrimination ***." Ill. Rev. Stat. 1981, ch. 68, at 3187.

We turn now to an issue which defendant presented below in its motion to dismiss and which is raised on appeal for our consideration. Defendant contends that section 17's prohibition against discrimination in "the hiring and promotion practices of any employer" does not include *termination and discharge* and that plaintiff's complaint is therefore insufficient because it does not allege that defendant engaged in discriminatory hiring or promotion practices.

On this point we concur with the court in *Greenholdt v. Illinois Bell Telephone Co.* (1982), 107 Ill. App. 3d 748, 438 N.E.2d 245, that the plain meaning of section 17, along with the insight provided by the proceedings of the Bill of Rights Committee, indicates that that section extends only to hiring and promotion as opposed to *all*

employment practices. (107 Ill. App. 3d 748, 753.) In view of the *Greenholdt* decision, we disagree with the trial court's ruling on this issue in the instant case which rejected defendant's argument. We conclude that our holding provides an additional reason for the dismissal of plaintiff's complaint. The trial court's final judgment in defendant's favor will therefore be affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.