ANNIE DELORES WILLIAMS, Plaintiff-Appellant, v. MARY NAYLOR *et al.*, Defendants-Appellees.

First District (5th Division)   No. 85—3178

Opinion filed August 29, 1986.

William M. Doty, Jr., of Russo, Doty & Associates, of Chicago, for appellant.

Marshall E. Winokur, of Chicago, for appellees.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from the dismissal of a complaint based on an alleged violation of the city of Chicago Fair Housing Ordinance (Chicago Municipal Code, ch. 198.7B (1973)).

Plaintiff filed a two-count complaint against defendants, the Albert H. Johnson Realty Company, Albert H. Johnson, its president and general manager, Mary Naylor, an employee thereof and Winosha Calloway, owner of an apartment building located at 715 E. 61st Street in Chicago. In it she alleged, essentially, that defendants had committed an unfair and unlawful housing practice by rejecting her application to rent an apartment in the above-specified building solely because she was a single woman; that she thereafter filed a written complaint with the department of housing charging defendants with a violation of the Fair Housing Ordinance, which prohibits discrimination in the sale or rental of housing on the basis of race, color, sex, marital status, religion, national origin or ancestry (Chicago Municipal Code, ch. 198.7B, pars. 3(A), (C) (1973)); that officials of the department of housing conducted an investigation of her complaint and found that probable cause existed for the allegations contained therein; that although a conciliation hearing was thereafter conducted at the office of the commissioner of housing the matter was not resolved; and that as a result of defendants' unlawful discrimination against her, she was compelled to find other, less suitable housing, for

which she sought both compensatory and punitive damages. Defendants filed a motion to dismiss the complaint asserting, as they do in defending this appeal, that the fair housing ordinance does not create a private right of action for civil rights violations. Following a hearing, the motion for dismissal was granted, and this appeal followed.

OPINION

It is agreed (1) that under the well-settled principle that a motion to dismiss admits all well-pleaded facts (*Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 432 N.E.2d 849; *Yount v. Hesston Corp.* (1984), 124 Ill. App. 3d 943, 464 N.E.2d 1214), for purposes of judging the sufficiency of plaintiff's complaint, the factual allegations contained therein, *i.e.*, that defendants refused to rent the subject apartment to her solely because she was a single woman, must be taken as true; and (2) that the Illinois Constitution guarantees that all persons have the right to freedom from discrimination on the basis of sex in the rental of property (Ill. Const. 1970, art. I, sec. 17). Proceeding from these undisputed premises, we turn then to the parties' respective assertions regarding the propriety of the order dismissing plaintiff's complaint for failure to state a cause of action.

Plaintiff contends that dismissal was improper, arguing generally that a private right of action for unlawful discrimination in the rental of housing is expressly allowed by the fair housing ordinance or, in the alternative, may—and should— be implied therefrom. It is defendants' position that the language of the ordinance does not provide for an action for damages thereunder nor should such a right be implied because the Illinois Human Rights Act (Ill. Rev. Stat. 1983, ch. 68, par. 1—101 *et seq.*), is the exclusive vehicle for redress of civil rights violations.

Initially, we note that section 11—11.1—1 of the Illinois Municipal Code, originally enacted in 1968 (Ill. Rev. Stat. 1969, ch. 24, sec. 11—11.1—1), was amended in 1977 to provide:

> "The corporate authorities of any municipality may enact ordinances prescribing fair housing practices, defining unfair housing practices, establishing Fair Housing or Human Relations Commissions and standards for the operation of such Commissions in the administering and enforcement of such ordinances, prohibiting discrimination based on race, color, religion, sex, creed, ancestry, national origin or physical or mental handicap in the listing, sale, assignment, exchange, transfer, lease, rental, or financing of real property for the purpose of the residential occupancy thereof, and prescribing penalties for viola-

tions of such ordinances." (Ill. Rev. Stat. 1977, ch. 24, sec. 11—11.1—1.)

In 1982, section 11—11.1—1 was further amended—by Public Act 82—340, identified as "An Act in relation to prohibiting local governments from limiting the housing choices of any person" (Pub. Act 82—340, eff. Aug. 21, 1981)—to add the following provision:

"To secure and guarantee the rights established by Sections 17, 18 and 19 of Article I of the Illinois Constitution, it is declared that any ordinance or standard enacted under the authority of this Section or under general home rule power and any standard, rule or regulation of such a Commission which prohibits, restricts, narrows or limits the housing choice of any person is unenforceable and void." Ill. Rev. Stat. 1983, ch. 24, par. 11—11.1—1.

Pursuant to the authority granted in section 11—11.1—1 of the Illinois Municipal Code, in 1973 the Chicago city council enacted the Fair Housing Ordinance (Chicago Municipal Code, ch. 198.7B (1973)),[1] which, in its present form, declares that "it is the policy of the City of Chicago to assure full and equal opportunity to all residents to obtain fair and adequate housing without discrimination against them because of their race, color, sex, marital status, religion, national origin or ancestry (Chicago Municipal Code secs. 198.7B—1, 198.7B—2 (1973)) and that discrimination against any person in the sale or rental of housing based on those distinctions constitutes an unfair and unlawful housing practice (Chicago Municipal Code, sec. 198.7B—3C (1973)). The ordinance also provides that any person aggrieved by a violation of it may file a written complaint (Chicago Municipal Code, sec. 198.7B—7 (1973)) with the commissioner of housing, whose duty it is to investigate such complaints (Chicago Municipal Code sec. 198.7B—6A (1973)) and, if probable cause is found for the allegations therein, to conduct a hearing, interview the parties and "attempt by all proper methods of conciliation and persuasion" to resolve the matter (Chicago Municipal Code sec. 198.7B—8 (1973)). In the event that such conciliation attempts are unsuccessful, the commissioner, within 60 days from the date the complaint was filed, "shall recommend to the Corporation Counsel that an ordinance violation action be taken against the respondent." (Chicago Municipal Code, sec. 198.7B—9

---

[1] A previous version of the Fair Housing Ordinance, enacted prior to the passage of section 11—11.1—1 of the Municipal Code was found to be void on the ground that the city lacked statutory authorization to enact it. *Two Hundred Nine Lake Shore Drive Building Corp. v. City of Chicago* (1971), 3 Ill. App. 3d 46, 278 N.E.2d 216.

(1973).) Any party found guilty of violating or failing to comply with its provisions is subject to a fine of up to $500. (Chicago Municipal Code, sec. 198.7B—12 (1973).) It is also stated in paragraph 12 that "Nothing herein contained shall be construed so as to preclude any aggrieved person from pursuing such other and further legal and equitable relief to which he may be entitled." Chicago Municipal Code, sec. 198.7B—12 (1973).

It is upon this latter provision in paragraph 12 that plaintiff relies for her assertion that the ordinance expressly authorizes a victim of housing discrimination to seek monetary damages or injunctive relief against the alleged violator in a private civil action. We cannot agree. In our view, the phrase "to which he may be entitled" is a reference to pre-existing legal and equitable rights and remedies outside the purview of the ordinance. Thus, it appears that paragraph 12 does not create any new rights or remedies but merely affirms that the ordinance does not foreclose or otherwise affect those already available to a complainant.

■ Disposition of this appeal does not, however, turn on construction of the language of the Fair Housing Ordinance with respect to charges of unlawful housing discrimination. Rather, the determinative question is whether, as defendants assert, the Illinois Human Rights Act (Ill. Rev. Stat. 1983, ch. 68, par. 1—101 *et seq.*), provides the exclusive judicial remedy therefor.

Section 1—102 of the Act declares:

"It is the public policy of this State:

(A) *** To secure for all individuals within Illinois the freedom from discrimination because of race, color, religion, sex, national origin, ancestry, age, marital status, physical or mental handicap *** in connection with *** real estate transactions ***.

***

(C) *** To secure and guarantee the rights established by Sections 17, 18 and 19 of Article I of the Illinois Constitution of 1970. ***" (Ill. Rev. Stat. 1983, ch. 68, par. 1—102.)

That policy is incorporated into article 3 of the Act, which specifically delineates and prohibits, as civil rights violations, certain discriminatory conduct in the sale and rental of real estate and housing accommodations (Ill. Rev. Stat. 1983, ch. 68, pars. 3—102 through 3—106). The Act thereafter provides, in article 7, a comprehensive scheme of procedures for the filing of a complaint alleging civil rights violations and the investigation and adjudication thereof by the Department of Human Rights (Ill. Rev. Stat. 1983, ch. 68, par. 7—102), including, in

section 7—104, a provision that "the Department may petition the appropriate court for temporary relief pending final determination of the proceedings under this Act" (Ill. Rev. Stat. 1983, ch. 68, par. 7—104(A)(1)), with specific reference in section 7—104(A)(3) to cases involving housing discrimination (Ill. Rev. Stat. 1983, ch. 68, par. 7—104(A)(3)).

Under article 8, which defines the powers and duties of the Human Rights Commission, the complainant may seek review by the Commission of an adverse determination by the Director of Human Rights on his complaint (Ill. Rev. Stat. 1983, ch. 68, par. 8—103(B)). If, after an evidentiary hearing, the Commission affirms the Department's finding as to the absence of evidence of discrimination, the complainant may then institute a proceeding for review in the circuit court in accordance with the provisions of the Administrative Review Law. (Ill. Rev. Stat. 1983, ch. 68, par. 8—111(A)(1).) In the event of a finding that a civil rights violation has occurred, however, the Commission may, *inter alia*, award damages, attorney fees and costs or "take such action as may be necessary to make the individual complainant whole." (Ill. Rev. Stat. 1983, ch. 68, pars. 8—108(A) through (I).) Finally, section 8—111(D) states that "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." Ill. Rev. Stat. 1983, ch. 68, par. 8—111(D).

In affirming the dismissal of a complaint for wrongful discharge based on age discrimination, the supreme court, in *Mein v. Masonite Corp.* (1985), 109 Ill. 2d 1, 485 N.E.2d 312, held:

"The legislature has specifically provided through the language of section 8—111(D) that courts have no jurisdiction to hear independent actions for civil rights violations. It is clear that the legislature intended the Act, with its comprehensive scheme of remedies and administrative procedures to be the exclusive source for redress of alleged human rights violations. [Citations.]" 109 Ill. 2d 1, 7, 485 N.E.2d 312, 315.

The court further noted as significant that a proposed amendment, presented in debates on Senate Bill 1377, which became the Human Rights Act (81st Ill. Gen. Assem., House Proceedings, June 22, 1979, at 158-59), which would have allowed civil actions in addition to or in lieu of the remedies provided in the Act, was tabled. See also *Dilley v. Americana Healthcare Corp.* (1984), 129 Ill. App. 3d 537, 472 N.E.2d 596; *Yount v. Hesston Corp.* (1984), 124 Ill. App. 3d 943, 464 N.E.2d 1214; *Thakkar v. Wilson Enterprises, Inc.* (1983), 120 Ill. App. 3d 878, 458 N.E.2d 985 (actions for employment discrimination

brought directly under article I of the Illinois Constitution barred by the provisions of the Illinois Human Rights Act).

In the light thereof, we conclude that plaintiff is not entitled to bring a direct action in the circuit court for damages resulting from a civil rights violation for discrimination on the basis of sex or marital status in the rental of housing.

We are not persuaded otherwise by plaintiff's argument that section 11—11.1—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 11—11.1—1), set out in relevant part earlier, is an alternate remedy contemplated by the drafters of the Human Rights Act through their insertion of the phrase "[e]xcept as otherwise provided by law" in section 8—111(D), limiting circuit court jurisdiction over civil rights cases. A similar argument was made and rejected in *Dilley v. Americana Healthcare Corp.* (1984), 129 Ill. App. 3d 537, 472 N.E.2d 596, an appeal from the dismissal of a complaint alleging employment discrimination under article I, section 17, of the 1970 Illinois Constitution (Ill. Const. 1970, art. I, sec. 17). In resolving the issue, the *Dilley* court examined the transcripts of the legislative debates on Senate Bill 1377 and concluded from the remarks of several senators and representatives that the objective of the legislature in adopting the Act was to create uniformity in the area of civil rights protection through the implementation of a single, comprehensive scheme of procedures and remedies and the concomitant elimination of private rights of action. The court found as particularly pertinent the comments of the senator who introduced the bill:

> " 'Currently, Illinois has eleven different Acts contained in the statutes that deal with discrimination in one form or another. These provisions differ in coverage, enforcement, penalty scope and intent. *Currently, our discrimination laws are enforced in the courts, both by criminal and civil actions and through three executive agencies.* *** I think you can all see that the confusion generated by multi-agency enforcement is counterproductive. The new Illinois Human Rights Act specifies the rights and enforcement procedures in relation to discrimination which are contained in this one Act.' (Emphasis added.) (Senate Debates, May 25, 1979, at 283.)" (129 Ill. App. 3d 537, 545, 472 N.E.2d 596, 602.)

Although the senator did not identify by title each of the various Illinois statutes then dealing with discrimination, we must presume from the fact that the portion of section 11—11.1—1 of the Illinois Municipal Code enabling municipalities to enact ordinances and adopt standards concerning fair housing had been in effect for more than a dec-

ade at the time of his remarks that it was one of the eleven to which he referred therein.

Moreover, there is nothing in the language of section 11—11.1—1 providing or even suggesting that it constitutes an exception to the specific limitation of circuit court jurisdiction over alleged civil rights violations clearly expressed in section 8—111(D) of the Human Rights Act. Indeed, in contrast to the Human Rights Act, which is remedial in nature, section 11—11.1—1 merely authorizes municipalities to regulate housing practices within their territorial boundaries in accordance with sections 17, 18 and 19 of article I of the Illinois Constitution by ordinances such as the one at issue here and to impose penalties upon violators thereof.

Finally, we note that the cases cited by plaintiff in support of her position that when read together section 11—11.1—1 and the Fair Housing Ordinance impliedly create a private right of action are inapposite to the case at bar in that none of them involved allegations of human rights violations or any of the enactments discussed herein.

For the reasons stated, the trial court's order dismissing plaintiff's complaint for damages based upon defendants' alleged violation of the Fair Housing Ordinance is affirmed.

Affirmed.

PINCHAM and LORENZ, JJ., concur.