**Suzanne BAILEY, Plaintiff,**

v.

**UNOCAL CORPORATION, et al., Defendants.**

**No. 88 C 1807.**

United States District Court, N.D. Illinois, E.D.

Nov. 29, 1988.

·Jeffrey M. Morris, McCoy Morris & Kula, Robert J. Zaideman, Francine Kaplan, Epstein Zaideman & Esrig, Chicago, Ill., for plaintiff.

Mark A. Lies, II, Catherine E. Carpenter, Seyfarth Shaw Fairweather & Geraldson, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Defendants move pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to strike and dismiss the plaintiff's complaint. In such circumstances, any inference drawn must be favorable to the plaintiff, *United Milk Products Co. v. Michigan Avenue National Bank of Chicago*, 401 F.2d 14, 17 (7th Cir.1968), and the allegations contained in the complaint are to be accepted as true. *National Van Lines, Inc. v. United States*, 326 F.2d 362, 372 (7th Cir.1964); 5 Wright, Miller & Cooper, Federal Practice and Procedure § 1363 at 656 (1969).

## FACTS

Plaintiff Suzanne Bailey ("Bailey") was employed by defendant Unocal Corporation ("Unocal") between December 1, 1974 and approximately July 31, 1987. During this period, Bailey alleges that she was subject to sexual harassment from her supervisor at Unocal, the individual defendant ("supervisor"). In particular, Bailey complains of a hostile and abusive work environment created by her supervisor's repeatedly requesting and proposing sexual relations with her, using sexual innuendoes, subjecting Bailey to unwelcome sexual advances, and exposing himself to her. Bailey also alleges that Unocal either had knowledge of the supervisor's actions and thereby implicitly approved, or that it acquiesced in

the conduct by deliberately electing not to inquire.

Bailey subsequently filed charges with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC") on or about June 15, 1987. In her filings Bailey failed to allege that the supervisor had exposed himself to her, but she did describe how he demanded that when traveling together on business they should register separately but should nonetheless stay together. The filings also describe a meeting between Bailey and the supervisor's boss, Bill Murphy ("Murphy"). Upon hearing her description of the supervisor's actions Murphy purportedly told Bailey he didn't want to hear her complaints because she and the supervisor were adults who could resolve their own personal problems. On December 10, 1987, Bailey received a right-to-sue letter from the EEOC. Soon thereafter she filed this action.

Count I alleges sexual discrimination by Unocal pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* Count II alleges a pendent state law claim for intentional infliction of emotional distress against the supervisor, and count III alleges the same cause of action against Unocal. We deny defendants' motion with respect to counts I and II, and dismiss count III.

## DISCUSSION

Defendants contend that this court should strike a portion of count I and should dismiss counts II and III for want of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

### I. *Paragraph 10(b)*

■ The dispute here arises because Bailey's filings before the EEOC and the IDHR did not include the allegations contained in paragraph 10(b) of the complaint's first count, which accuse the supervisor of "exposing himself to plaintiff." The defendants contend that 10(b) should be stricken because the allegations contained

therein do not appear in the administrative filings.

Defendants argue that striking ¶ 10(b) would further the "statutory policy embodied in Title VII that potential defendants must become aware of charges against them so that good faith negotiation and an opportunity to conciliate the charge can be obtained" (def.mem. at 3). We think defendants' own interpretation of the reasons why claims of first impression cannot be alleged in the complaint makes clear that their motion to strike should be denied: the allegations in the IDHR and EEOC filings gave the defendants ample notice of the charges against them, and negotiations should have been commenced regardless of the particularized allegation in ¶ 10(b).

Adequate notice is afforded defendants where the complaint alleges claims reasonably related to the EEOC charges. *See, e.g., Box v. A. & P. Tea Co.,* 772 F.2d 1372 (7th Cir.1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986); *Jenkins v. Blue Cross Mutual Hospital Insurance Incorporated,* 538 F.2d 164, 167 (7th Cir.1976) (*en banc*), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976); *Danner v. Phillips Petroleum Company,* 447 F.2d 159 (5th Cir.1971). This standard is interpreted liberally—most EEOC charges are brought by lay people and not lawyers. *Babrocky v. Jewel Food Company,* 773 F.2d 857, 864 (7th Cir.1985).

The allegations of ¶ 10(b) meet this criterion. The EEOC complaint alleged "sexual harassment," including "suggestions and advances" which "created an environment that made it impossible to work" and which resulted in "extreme emotional and physical distress and anxiety" (def. mo. exh. A at 1–2). The complaint merely elaborates on the sexual harassment by detailing one of the "advances." The allegations of exposure, if proven, are no less appropriate than other reasonably related details merely because they appear to strengthen the plaintiff's case.

### II. *Intentional Infliction of Emotional Distress*

Counts II and III both allege the tort of intentional infliction of emotional distress.

Count II alleges a claim against the supervisor, while count III alleges a claim against Unocal.

### A. Elements of the Cause of Action

To state a cause of action for the tort of intentional infliction of emotional distress in Illinois, the plaintiff must allege, among other things, that the alleged conduct was extreme and outrageous. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 88, 360 N.E.2d 765, 767, 4 Ill.Dec. 652, 654 (1976), *quoting Restatement (Second) of Torts*, § 46, comment d (1965). The defendants urge us to dismiss counts II and III, claiming the alleged conduct does not meet this requirement.

Defendants' motion rests, ultimately, on the contention that the plaintiff must plead facts which clearly would establish that the conduct was indeed extreme and outrageous. But a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The Federal Rules of Civil Procedure "do not require claimant to set out in detail the facts upon which he bases his claim," but rather ask only for a "short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 47, 78 S.Ct. at 103.

We have previously taken note of the importance of the relationship between the parties as a factor in determining whether particular conduct is extreme and outrageous. In *Bahr v. Ellis & Robertson, Inc.*, No. 85 C 956, slip op. (N.D.Ill. October 15, 1985) [1985 WL 3074], we denied defendant's motion to dismiss where plaintiff alleged repeated sexual harassment, including "verbal and physical sexual advances," "repeated[ly] touch[ing] the derriere and the breast," and "sexual insinuations and invitations to be intimate" (slip op. at 2). *Bahr* discussed the relevance of the employer-employee relationship. After noting how "racial or ethnic slurs ordinarily do not provide grounds for an emotional distress claim but they can when an employer directs them at an employee," *id.* at 7 (citations omitted), we found that Illinois courts have recognized a lower threshold of liability for emotional distress where the defendant has abused or exploited a relationship. *Id.* at 8, *citing Public Finance*, 66 Ill.2d at 90, 360 N.E.2d at 767, 4 Ill.Dec. at 654; *Geist v. Martin*, 675 F.2d 859 (7th Cir.1982); *Robertson v. Travelers Insurance Co.*, 100 Ill. App.3d 845, 427 N.E.2d 302, 56 Ill.Dec. 222 (5th Dist.1981). With this in mind, we denied the defendant's motion to dismiss.

█ We recognize today, as we did in *Bahr*, that Illinois has a very high standard for what constitutes "extreme and outrageous" conduct. Nonetheless, we will not dismiss plaintiff's complaint on the pleadings. The complaint alleges that

the defendant unlawfully subjected plaintiff to a hostile and abusive work environment, thereby altering the terms and conditions of plaintiff's employment, by:

(a) subjecting plaintiff to unwelcome sexual advances;

(b) exposing himself to plaintiff;

(c) subjecting plaintiff to unwelcome comments containing sexual innuendos;

(d) subjecting plaintiff to repeated requests and propositions for sexual behavior.

(Cplt. at ¶ 10.) We cannot presently conclude that the alleged course of sexual harassment, with its various forms ranging from innuendo to exposure, is not extreme and outrageous.[1] Rather, we choose to await the fruits of discovery and will revisit the issue on summary judgment if asked.

---

1. Defendants ask us to distinguish *Bahr* on its facts because the plaintiff therein alleged sexual touchings while none are alleged here (reply mem. at 14). In sum, we refuse to draw a line which categorizes offensive touching as extreme and outrageous, but not "exposure," whatever that may mean.

Count III raises a different issue—can Unocal be liable for the alleged intentional infliction of emotional distress by its employee? Such liability might be found either derivatively or directly. But derivative claims stemming from the conduct of employees under *respondeat superior* are exactly those types of claims preempted by the Illinois Workers' Compensation Act ("WCA"), Ill.Rev.Stat.1985 ch. 48, § 138.1 *et seq.* The injury is deemed accidental with respect to the employer and the WCA provides the exclusive remedy.

Bailey instead alleges the culpability of Unocal itself in that "the defendant Unocal implicitly approved of or acquiesced in the wrongful conduct ... by electing not to learn the specific nature of said conduct" (cplt., count III at ¶ 10). And this court does not dispute that employers can be liable for intentional torts committed against their employees. *See, e.g., Martin v. Granite City v. Steel Division of National Steel,* 607 F.Supp. 1430 (S.D.Ill. 1985). The crucial issue is therefore whether Unocal itself committed the tort of intentional infliction of emotional distress. But even under the liberal standards of notice pleading, Bailey's vague allegations as to Unocal's complicity are insufficient to meet Illinois' very strict interpretation of what constitutes extreme and outrageous conduct. Absent the direction, encouragement or committal of the intentional infliction by Unocal, count III, failing to allege the egregious conduct the claim requires and thereby falling within the scope of *Collier v. Wagner Castings Company,* 81 Ill.2d 229, 239, 408 N.E.2d 198, 203, 41 Ill.Dec. 776, 781 (1980), is preempted and therefore dismissed.[2]

### B. Preemption by the Illinois Human Rights Act

By its terms the Illinois Human Rights Act, P.A. 81–1216, 68 Ill.Rev.Stat. § 1–101 *et. seq.* ("IHRA)), is

> [a]n Act to promote the public health, welfare and safety of the People of the State of Illinois by preventing unlawful discrimination in employment, real property transactions, access to financial credit, and public accommodations, by authorizing the creation of a Department of Human Rights to enforce, and a Human Rights commission to adjudicate, allegations of unlawful discrimination, and by making uniform the law with reference to unlawful discrimination through the addition, amendment and repeal of acts.

68 Ill.Rev.Stat. § 1–101. Included in § 2–102, entitled "Civil rights violation—Employment," is a prohibition of sexual harassment, a term previously defined at

---

2. There is an interesting question as to whether there is proper jurisdiction over count II, given that the claim for relief is therein alleged against the supervisor and not Unocal. The now dismissed claim for relief in count III is prototypically pendent to the Title VII claim of count I in that both "derive from a common nucleus of operative fact" and a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). But count II, because it alleges that the actions of the supervisor and not Unocal caused emotional distress, is jurisdictionally distinct. The issue is whether a district court has jurisdiction over pendent parties. In *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the Court refused "to formulate any general, all-encompassing jurisdictional rule," *id.* at 13, 96 S.Ct. at 2419, so the various courts of appeals have formulated their own approaches. For example, the Ninth Circuit "has long rejected the doctrine of pendent parties across the board." *Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1369 (7th Cir.1985) (Posner, J., concurring in part, dissenting in part). And while the Seventh Circuit has described the situation as "embattled," *see Bernstein v. Lind–Waldock & Co.,* 738 F.2d 179, 187 (7th Cir.1984), it has recognized the "substantial authority" for "retaining the doctrine where the main claim is, as in this case, a federal claim." *Moore,* 754 F.2d at 1360, *citing In re Oil Spill by Amoco Cadiz,* 699 F.2d 909, 913–14 (7th Cir.1983), *cert. denied.* 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 172 (1983); *Weinberger v. Kendrick,* 698 F.2d 61, 76–77 (2d Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); *Joiner v. Diamond M. Drilling Co.,* 677 F.2d 1035, 1040–41 (5th Cir. 1982); *North Dakota v. Merchants National Bank & Trust Co.,* 634 F.2d 368, 370–74 (8th Cir.1980) (*en banc*); *Stewart v. United States,* 716 F.2d 755, 758 (10th Cir.1982), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984); *Lykins v. Pointer, Inc.,* 725 F.2d 645, 648–49 (11th Cir.1984). Without delving further into the constitutional and policy interests at issue, we find count II jurisdictionally adequate.

§ 2–101(E). Section 2–102 reads as follows:

Civil Rights Violations—Employment. It is a civil rights violation:

\* \* \* \* \* \*

(D) Sexual Harassment. For any employer, employee, agent of any employer, employment agency or labor organization to engage in sexual harassment; provided, that an employer shall be responsible for sexual harassment of the employer's employees by nonemployees or nonmanagerial and nonsupervisory employees only if the employer becomes aware of the conduct and fails to take reasonable corrective measures.

There is no dispute at the present time as to whether or not the alleged acts meet the definition of Sexual Harassment contained in § 2–101(E). Nor is there any disagreement that § 2–102(D) prohibits the conduct at bar.

The question here is, rather, how to interpret the limitation section of the IHRA, § 8–111(C). That provision reads as follows:

(C) Limitation. Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this act.

In particular, we inquire as to whether § 8–111(C) preempts plaintiff's pendent intentional infliction of emotional distress claim and thereby removes subject matter jurisdiction over counts II and III.

Numerous prior decisions have been invoked by both parties in a way which can best be described as cavalier. We try herein to make sense of the patchwork of prior litigation by separating the various causes of action discussed, to better determine why each court concluded the way it did.

Several courts have inquired into the preemptive effect of the limitation provision as it relates to the causes of action purportedly created by the IHRA itself. The courts have held that direct actions for discrimination against employers under the Illinois Fair Employment Practice Act ("FEPA"), the predecessor statute to the IHRA, were preempted by that statute's limitation provision. *See Manuel v. International Harvester Co.,* 502 F.Supp. 45, 49 (N.D.Ill.1980); *see also Beane v. Millers Mutual Insurance Association of Alton,* 90 Ill.App.3d 258, 261, 412 N.E.2d 1124, 1127, 45 Ill.Dec. 542, 545 (5th Dist.1980). The plaintiffs in those cases were therefore required to follow the Act's administrative scheme prior to lodging a complaint in court. *See Mein v. Masonite Corp.,* 109 Ill.2d 1, 7, 485 N.E.2d 312, 314, 92 Ill.Dec. 501, 503 (1985) (holding that the IHRA's limitation provision precluded direct actions for discharges based on age); *Manuel,* 502 F.Supp. at 49 n. 6 ("The Court observes that the new Illinois statute supplanting the FEPA is to the same effect"). The limitation provision of the IHRA most obviously applies to rights expressly recognized and granted protection by that same enactment. The legislative history of the IHRA supports the conclusion that such direct actions were to be preempted. According to the court in *Mein,*

[d]ebates on Senate Bill 1377, which became the Human Rights Act, confirm that the legislature intended by the Act to avoid direct access to the courts for redress of civil rights violations. (81st Ill.Gen.Assem., Transcript of House Proceedings, June 22, 1979, at 133, 146; June 25, 1979, at 87.) Significantly, a proposed amendment to the bill which would have allowed civil actions in addition to or in lieu of the remedies provided in the Act was tabled. 81st Ill.Gen.Assem., Transcript of House Proceedings, June 22, 1979, at 158–59.

109 Ill.2d at 7, 485 N.E. at 315, 92 Ill.Dec. at 504. If the limitation is to be given any meaning, it must require that plaintiffs pursuing civil rights claims based on the IHRA must follow the administrative scheme created therein. Prior courts have had no difficulty in so holding.

The issue becomes slightly more complex when we inquire into whether the IHRA's limitation provision precludes suits arising under the Illinois Constitution. Article I, Section 17 provides protection from employment discrimination:

All persons shall have the right to be free from discrimination on the basis of race, color, creed, national ancestry and sex in the hiring and promotion practices of any employer or in the sale or rental of property.

The question is whether the IHRA's limitation provision eliminates direct actions arising under Article I, Section 17, and instead requires administrative action under the Act's provisions.

Article I, Section 17 itself appears to provide the answer:

These rights are enforceable without action by the General Assembly, but the General Assembly by law may establish reasonable exemptions relating to these rights and provide additional remedies for their violation.

Courts which have dealt with this issue have found that the IHRA and its predecessor, the FEPA, are reasonable exemptions within the meaning of Article I, Section 17. Thus direct actions under the Illinois Constitution were held to be preempted. *E.g.,* *Sanders v. A.J. Canfield Co.,* 635 F.Supp. 85, 87 (N.D.Ill.1986) (alleged race and sex discrimination); *Dilley v. Americana Healthcare Corp.,* 129 Ill.App.3d 537, 544, 472 N.E.2d 596, 603, 84 Ill.Dec. 636, 643 (4th Dist.1984) (alleged sex discrimination); *Thakkar v. Wilson Enterprises, Inc.,* 120 Ill.App.3d 878, 882, 458 N.E.2d 985, 987–88, 76 Ill.Dec. 331, 333–34 (1st Dist.1986) (alleged national origin discrimination).[3] Many of these courts have inquired into the legislative history of the Illinois constitution. For example, the court in *Thakkar* discussed the efforts of the Bill of Rights Committee (6 Record of Proceedings, Sixth Illinois Constitutional Convention, 68–69):

The Committee concluded that the right to freedom from discrimination should be subject to a legislative power to establish reasonable exemptions. The subject of discrimination in employment or housing on the basis of race, color, creed, national ancestry or sex has many different facets. This is evident from the numerous exceptions written into state and federal legislation forbidding discrimination in these areas.

\* \* \* \* \* \*

Appropriate exceptions cannot readily be treated in a constitutional provision, but they can be provided by legislation. Consequently, the new section authorizes the General Assembly to "establish reasonable exemptions" from the rights created in the section.

Since the right is explicitly made "enforceable without action by the General Assembly," *an aggrieved person could have recourse to existing judicial or legislative remedies* for a violation of the right. The General Assembly is also authorized to prescribe additional remedies.

120 Ill.App.3d at 882, 458 N.E.2d at 988, 76 Ill.Dec. at 334 (emphasis supplied in *Thakkar*). *See also Dilley,* 129 Ill.App.3d at 542–43, 472 N.E.2d at 600, 84 Ill.Dec. at 640.

Another area of interest is the preemptive effect of the IHRA on causes of action arising under other statutes. For example, the court in *Williams v. Naylor,* 147 Ill. App.3d 258, 497 N.E.2d 1274, 100 Ill.Dec. 912 (1st Dist.1986), explored whether a suit brought seeking damages for violation of Chicago's fair housing ordinance, enacted

---

**3.** This same analysis has been held persuasive as applicable to other protections of the Illinois constitution. Section 18, which provides that "[t]he equal protection of the laws shall not be denied or abridged on account of sex by the State or its units of local government and school districts," has been held preempted by the IHRA. *See Danielson v. DuPage Area Vocational Educational Authority,* 595 F.Supp. 27, 33 (N.D.Ill.1984) ("The court is also persuaded that the logic of *Thakkar* requires the action, to the extent it is brought under § 18, to be subject to the Act's administrative procedures"). And Section 19, which provides that "[a]ll persons with

a physical or mental handicap shall be free from discrimination in the sale or rental of property shall be free from discrimination unrelated to ability in the hiring and promotion practices of any employer," has also been held preempted. *See Yount v. Hesston Corporation,* 124 Ill.App.3d 943, 949, 464 N.E.2d 1214, 1218, 80 Ill.Dec. 231, 235 (2nd Dist.1984) ("Although the *Thakkar* and *Curtis* [568 F.Supp. 740 (N.D. Ill.1983)] cases dealt with article I, section 17, of the constitution, their rationales and results are applicable equally to section 10 of article I of our constitution").

pursuant to the Illinois Municipal Code,[4] was preempted by the IHRA. The plaintiff, a single woman, alleged that she was the victim of discrimination on the basis of her sex and marital status because the defendants would not rent her an apartment. After both noting that Article 7 of the IHRA provides a "comprehensive scheme of procedures for the filing of a complaint alleging civil rights violations" and also invoking the limitation provision, the court held that "plaintiff is not entitled to bring a direct action in the circuit court for damages resulting from a civil rights violation for discrimination on the basis of sex or marital status in the rental of housing." 147 Ill.App.3d at 264, 497 N.E.2d at 1276–77, 100 Ill.Dec. 914–15.

This case, however, is a completely different animal. The issue here is the extent to which the limitation provision of the IHRA preempts claims arising from common law torts. As a general matter, "statutes in derogation of the common law are strictly construed in favor of those subject to their operation," here a victim of sexual harassment who would have had a common law tort action for intentional infliction of emotional distress. *Roberts v. Western–Southern Life Insurance Co.*, 568 F.Supp. 536, 549 (N.D.Ill.1983). *See Barthel v. Illinois Central Gulf R. Co.*, 74 Ill.2d 213, 220, 384 N.E.2d 323, 327, 23 Ill.Dec. 529, 533 (1978); *see also Summers v. Summers*, 40 Ill.2d 338, 342, 239 N.E.2d 795, 798 (1968). For example, the Illinois Supreme Court has looked to whether a common law tort existed at the time of the implementation of liability limits to ascertain whether those limits were constitutional. *See, e.g., Wright v. Central DuPage Hospital Association*, 63 Ill.2d 313, 347 N.E.2d 736 (1976) (holding unconstitutional a $500,000 cap on damages for medical malpractice because the tort of negligence permitted higher recoveries at common law); *Cunningham v. Brown*, 22 Ill.2d 23, 174 N.E.2d 153 (1961) (upholding the recovery limit in the Dramshop Act of 1872 because there was no common law action for damages against a supplier of liquor for injuries inflicted by an intoxicated person or resulting from intoxication); *Hall v. Gillins*, 13 Ill.2d 26, 147 N.E.2d 352 (1958) (upholding the recovery limit in the Wrongful Death Act because there was no common law cause of action for wrongful death).

Absent more clear direction from the Illinois courts, the plaintiff's claim for intentional infliction of emotional distress is not preempted by the IHRA. The Act prohibits all sexual harassment, both that which would amount to intentional infliction of emotional distress and that which would not. In the instant case, the totality of the circumstances which amount to sexual harassment proscribed by the IHRA also may meet the additional criteria necessary to constitute intentional infliction. As long as the state tort addresses a concern separate from that addressed by the statute, it is not preempted. The IHRA's limitation section does not impact upon the state intentional infliction claim and defendants' motion to dismiss for want of subject matter jurisdiction is denied. By that conclu-

---

**4.** Section 11–11.1–1 of the Illinois Municipal Code, originally enacted in 1968 (Ill.Rev.Stat. 1969, ch. 24, § 11–11.1–1), was amended in 1977 to provide:

The corporate authorities of any municipality may enact ordinances prescribing fair housing practices, defining unfair housing practices, establishing Fair Housing or Human Relations Commissions in the administering and enforcement of such ordinances, prohibiting discrimination based on race, color, religion, sex, creed, ancestry, national origin or physical or mental handicap in the transfer, lease, rental, or financing of real property for the purpose of the residential occupancy thereof, and prescribing penalties for violations of such ordinances.

Ill.Rev.Stat.1977, ch. 24, § 11–11.1–1. In 1982, § 11–11.1–1 was further amended. Public Act 82–340, identified as "[a]n Act in relation to prohibiting local governments from limiting the housing choices of any person" (P.A. 82–340, eff. Aug. 21, 1981), added the following provision:

To secure and guarantee the rights established by Sections 17, 18 and 19 of the Illinois Constitution, it is declared that any ordinance or standard enacted under the authority of this Section or under general home rule power and any standard rule or regulation of such a Commission which prohibits, restricts, narrows or limits the housing choice of any person is unenforceable and void.

Ill.Rev.Stat.1983, ch. 24, ¶ 11–11.1–1.

sion we agree with Judge Norgle in *Clay v. Quartet Manufacturing Co.*, 644 F.Supp. 56, 61 (N.D.Ill.1986):

> Defendants would have IHRA preempt all "civil rights" discrimination claims and all factually related common law torts. Neither *Mein* nor *Danielson* supports such a broad rule. Instead, those cases stand for the rather limited rule that common law claims predicated on the policies or provisions of IHRA are barred by IHRA. Thus, for example, a claim of wrongful discharge based on race discrimination is barred by IHRA (*Mein*), but a claim for the intentional infliction of emotional distress premised on traditional tort principles is not barred by IHRA even though the tort occurs in an employment setting.

Where the elements of the tort require proof of nothing more than that proscribed by the Act, and where the tort merely furthers the same policies as the statute, the IHRA will preempt the tort action. But where the tort requires more, and thereby furthers goals in addition to those addressed by the IHRA, the Act will not preempt the claim.[5]

This distinction adequately explains why certain other torts have been held to be preempted by the IHRA. For example, in *Bahr v. Ellis & Robertson, Inc., supra,* this court held that the tort of retaliatory discharge had been preempted. We emphasized therein that the tort was created to safeguard public policy in those instances where "an employee would have no effective legal remedy for an employer's act" (slip op. at 4). Because "interests such as

freedom from discrimination or discriminatory harassment have protection under the H.R.A. [herein IHRA]," *id.,* we held that the IHRA preempted the pendent state claim. *See also Carrillo v. Illinois Bell Telephone Co.,* 538 F.Supp. 793, 799 (N.D. Ill.1982) (*dictum*) ("the very completeness of the statutory remedies for employment discrimination that are codified in the Human Rights Act, Ill.Rev.Stat. ch. 68, ¶ 1–101 *et seq.,* argue against the application of the tort to employment discrimination cases"). Both our decision in *Bahr* and Judge Aspen's decision in *Brudnicki v. General Electric Co.,* 535 F.Supp. 84 (N.D. Ill.1982), implicitly acknowledged the distinction between the torts of retaliatory discharge and intentional infliction of emotional distress by dismissing the former and not the latter.

And it is a distinction with a difference. If plaintiff's proofs fail to establish the extreme conduct required for the Illinois tort and merely show sexual harassment, her pendent claims will suffer the same fate as the age discrimination claims plaintiff unsuccessfully sought to package in another guise in *Anderson v. Pistner,* 148 Ill.App.3d 616, 620, 499 N.E.2d 566, 569, 102 Ill.Dec. 9, 12 (1st Dist.1986) ("we believe it is clear that they have realleged an age discrimination claim in their amended complaint").

## CONCLUSION

For the foregoing reasons, defendants' motion to strike and dismiss is denied with

---

**5.** For our purposes, the most important element of the intentional infliction of emotional distress tort is proof that the conduct is extreme and outrageous. Such a showing is beyond that required to state a claim for sexual harassment under the IHRA. And the policies protected by the tort are different as well: the prevention of behavior where "the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim 'Outrageous!'" *Restatement of the Law,* 1948 Supp., Torts, § 46, comment g.

The origin of the intentional infliction tort can be traced to English common law. According to Prosser, things in merry old England were getting out of hand:

> In special situations of extreme misconduct, recovery is allowed. The leading case which first broke through the shackles of the older law was *Wilkinson v. Downton* ( [1897] 2 Q.B. D. 57), in which a practical joker amused himself by telling a woman that her husband had been smashed up in an accident and was lying at The Elms at Leytonstone with both legs broken, and that she was to go at once in a cab with two pillows to fetch him home. The shock to her nervous system produced serious and permanent physical consequences which at one time threatened her reason, and entailed weeks of suffering and incapacity. *Prosser and Keeton on Torts,* § 12 at 60 (1984).

 

respect to counts I and II. Defendants' motion to dismiss count III is granted.