**Anna M. JUAREZ, Plaintiff,**

v.

**AMERITECH MOBILE COMMUNICATIONS, INC., a Delaware Corporation, and Peter Shkrutz, individually and each of them, Defendants.**

**No. 89 C 00017.**

United States District Court, N.D. Illinois, E.D.

Sept. 10, 1990.

---

Richard L. Lucas, William E. Hale, Richard L. Lucas & Assoc., Ltd., Addison, Ill., for plaintiff.

Barry A. White, David B. Ritter, James W. Gladden, Jr., Mayer, Brown & Platt, Chicago, Ill., Howard E. Gilbert, Michael D. Richman, Howard & Gilbert & Assoc., Ltd., Skokie, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff Anna M. Juarez brought this sexual harassment action against defendants Peter Shkrutz and Ameritech Mobile Communications, Inc. ("AMCI").

Ms. Juarez's counsel failed to serve Mr. Shkrutz with the summons and complaint within 120 days of filing her complaint, however, as required by Federal Rule of Civil Procedure 4(j). Because Ms. Juarez's counsel failed to show good cause for not serving Mr. Shkrutz within the 120–day period, the court was required to dismiss this lawsuit as to Mr. Shkrutz. *See Juarez v. Ameritech*, No. 89 C 00017 (N.D.Ill. Nov. 28, 1989).

Now AMCI has moved for summary judgment on Ms. Juarez's complaint. For the reasons stated below, AMCI's motion must be granted.

## I. BACKGROUND FACTS

The following facts are undisputed. AMCI is a corporation in the business of providing cellular radio telecommunications and radio paging services. (12(*l*) Statement, ¶ 1.[1]) AMCI hired Ms. Juarez on May 27, 1986 as an administrative assistant. She reported to AMCI's treasurer, Richard M. Slavin. The job title "administrative assistant" is used by AMCI to designate clerical/secretarial positions. (12(*l*) Statement, ¶ 2.)

Ms. Juarez's job duties for Mr. Slavin included typing, answering telephones, scheduling meetings, making travel arrangements, preparing expense accounts, and handling the mail. (12(*l*) Statement, ¶ 3.) Ms. Juarez also performed secretarial duties for various other AMCI employees, including Mr. Shkrutz, AMCI's assistant treasurer. (12(m) Statement, ¶ 4.[2])

The incidents of sexual discrimination of which Ms. Juarez complains began shortly after Ms. Juarez commenced working at AMCI. Four or five times from late June, 1986 until July 3, 1986 Mr. Shkrutz telephoned Ms. Juarez at work during business hours, speaking to her in a sexually suggestive manner. Three or four occasions during this same time period Mr. Shkrutz made sexually suggestive comments to Ms. Juarez face-to-face. After the fourth or

---

**1.** This refers to AMCI's Statement of Uncontested Facts, submitted pursuant to Local Rule 12(*l*) of this district.

**2.** This refers to Ms. Juarez's Responsive Statement to AMCI's Statement of Uncontested Facts, submitted pursuant to Local Rule 12(m) of this district.

fifth phone call, Ms. Juarez informed Mr. Shkrutz that the calls bothered her and asked him to stop making either sexually suggestive phone calls or comments. He did so. (12(*l*) Statement, ¶ 8.)

On July 3, 8, and 9, 1986, however, Mr. Shkrutz engaged in more offensive behavior, the details of which the parties do not dispute for purposes of this motion. (12(*l*) Statement, ¶ 8.) Apparently fed up with Mr. Shkrutz's misconduct, Ms. Juarez told Sue Martinez, an accounts payable clerk at AMCI, about Mr. Shkrutz's behavior. Ms. Martinez in turn informed Kimieth Bettendorf, an accounts payable supervisor at AMCI, about Mr. Shkrutz's actions. (12(*l*) Statement, ¶ 12.)

On the morning of July 10, 1986, Ms. Bettendorf met with Marsha Rybski, a general manager of human resources for AMCI. Ms. Bettendorf advised Ms. Rybski that an "unnamed party" was being sexually harassed at AMCI and inquired about AMCI's sexual harassment policy.[3] (12(*l*) Statement, ¶ 13.)

Ms. Rybski advised Ms. Bettendorf that the person should file a formal complaint and that the offender would be stopped. (12(*l*) Statement, ¶ 13.) When Ms. Bettendorf told Ms. Rybski that the anonymous party feared coming forward to make a formal complaint because she was concerned that it would affect her continued employment at AMCI, Ms. Rybski responded, "please tell this person to come forward and not to be afraid of being fired or being harassed from the company in any way." (12(*l*) Statement, ¶ 14.) Ms. Bettendorf relayed this information to Ms. Juarez. (12(*l*) Statement, ¶ 15.)

Early in the afternoon of the same day—July 10, 1986—Ms. Juarez met with Ms. Rybski and told her about the incidents of sexual harassment involving Mr. Shkrutz. At that time, however, Ms. Juarez refused to file a formal complaint against Mr. Shkrutz or to permit Ms. Rybski to investigate Ms. Juarez's allegations. Ms. Rybski assured Ms. Juarez that her position at AMCI would not be jeopardized if she filed a formal complaint. (12(*l*) Statement, ¶ 16.)

On Monday, July 14, 1986 Ms. Juarez met with John S. McClelland, director of human resources for AMCI, and filed a formal complaint of sexual harassment against Mr. Shkrutz. (12(*l*) Statement, ¶ 17.) Mr. McClelland assured Ms. Juarez both that she would not lose her job for filing her complaint and that he would take immediate action to resolve the situation within a week. (12(*l*) Statement, ¶ 18.)

That same day Mr. McClelland spoke with Ms. Bettendorf and Ms. Martinez about the situation. (12(*l*) Statement, ¶ 25.) On July 16 and 17 Mr. McClelland spoke directly with Mr. Shkrutz. (12(*l*) Statement, ¶ 21.) He told Mr. Shkrutz that a formal complaint of sexual harassment had been filed against him and confronted Mr. Shkrutz with Ms. Juarez's specific allegations of sexual misconduct.

Mr. Shkrutz admitted some of the allegations, but denied others. (12(*l*) Statement, ¶ 22.) Moreover, Mr. Shkrutz told Mr. McClelland that his relationship with Ms. Juarez was "mutual" and that Ms. Juarez gave him her telephone number and wrote him a "love" note.[4] (12(*l*) Statement, ¶ 23.)

On July 18, 1986 both Mr. McClelland and Mr. Slavin met with Mr. Shkrutz. Mr. Slavin handed Mr. Shkrutz a memorandum reviewing and summarizing the results of Mr. McClelland's investigation. Mr. Shkrutz was told he was suspended for one week without pay because of his sexual harassment. (12(*l*) Statement, ¶ 26.)

---

**3.** At the time, AMCI had a sexual harassment policy prohibiting "sexual harassment of its employees in any form. Such conduct may result in disciplinary action up to and including dismissal." Under the policy employees were to notify their supervisor or AMCI's human resources department about the harassment and were informed that there would be no "reprisal" for filing a complaint of sexual harassment. (12(*l*) Statement, ¶ 32.) AMCI distributed copies of its sexual harassment policy to employees on June 9, 1986, although Ms. Juarez claims she did not receive information on the policy until October or November of 1986. (12(*l*) and 12(m) Statements, ¶ 34.)

**4.** As part of his investigation Mr. McClelland also spoke with two other AMCI employees about Mr. Shkrutz's conduct. (12(*l*) Statement, ¶ 25.)

Mr. Shkrutz protested his suspension, denied the allegations of sexual harassment, and voluntarily terminated his employment with AMCI in December of 1986 to relocate to New York. (12(*l*) Statement, ¶¶ 28–29.) From the date AMCI began its investigation until AMCI terminated her employment on January 5, 1987, Ms. Juarez never again was sexually harassed by Mr. Shkrutz or any other AMCI employee. (12(*l*) Statement, ¶ 30.)

Approximately six months after Ms. Juarez filed her complaint of sexual harassment, AMCI terminated her, citing poor job performance. Prior to that time AMCI employees extensively documented Ms. Juarez's performance difficulties.

For example, on July 30, 1986, Jan Deswik–Dolik, one of the persons for whom Ms. Juarez performed work, wrote a memorandum to Mr. Slavin complaining about Ms. Juarez's work performance. Specifically, Ms. Deswik–Dolik explained that Ms. Juarez did not follow directions, did not proofread documents she typed, and did not "exercise good judgment." (12(*l*) Statement, ¶¶ 4, 35; Juarez Dep. Exhibit 8.) In November of 1986 Ms. Deswik–Dolik again complained to Mr. Slavin, this time about Ms. Juarez's typographical errors and errors in addition. (12(*l*) Statement, ¶ 36.)

Other AMCI employees complained about Ms. Juarez's work performance as well. In August of 1986 Etna Przada, administrative assistant to AMCI's vice president and chief financial officer, informed Mr. Slavin that Ms. Juarez had difficulty "relaying telephone messages to the correct person" and that the messages she took were not accurate. (12(*l*) Statement, ¶ 37.) Ms. Przada also complained that Ms. Juarez failed to lock the vice president's desk and process his mail after filling in for Ms. Przada one day when she was ill. (12(*l*) Statement, ¶ 38.)

In October of 1986 Charles Moran, another AMCI employee for whom Ms. Juarez performed work, also complained of Ms. Juarez's performance—specifically, her clerical errors. (12(*l*) Statement, ¶¶ 4, 39–40.)

In August of 1986 Mr. Slavin evaluated Ms. Juarez's job performance for the first half of 1986. Mr. Slavin described Ms. Juarez's typing as "below expectations" because of typographical errors, use of incorrect document formats, failure to check spelling and logic in sentences, and failure to complete essential documents on time. (12(*l*) Statement, ¶ 42.) Mr. Slavin rated other areas of Ms. Juarez's performance as also unacceptable, stating that many problems outlined were present from the "beginning of her employment and that while the harassment issue didn't help, it was not the cause." (12(*l*) Statement, ¶¶ 43–44, 46.)

Although Ms. Juarez admitted making mistakes in performing her duties at AMCI (12(*l*) Statement, ¶ 41), she told Mr. Slavin that she disagreed with the comments on her performance review. Mr. Slavin reviewed with Ms. Juarez what he expected in terms of her improved performance. (12(*l*) Statement, ¶¶ 47–49.)

After developing admittedly reasonable performance objectives for Ms. Juarez for the second half of 1986, Mr. Slavin again reviewed Ms. Juarez's performance on November 18, 1986. (12(*l*) Statement, ¶¶ 50–51.) However, he found Ms. Juarez's performance still below expectations. (12(*l*) Statement, ¶¶ 53–56.)

Mr. Slavin and Ms. Juarez met to develop a plan to improve her performance and again set specific performance standards. (12(*l*) Statement, ¶¶ 57–58.) Nonetheless, twice in December of 1986 Mr. Slavin met with Ms. Juarez to discuss further specific problems with her performance. (12(*l*) Statement, ¶ 61.) Additionally, Ms. Deswik–Dolik informed Mr. Slavin in writing that although Ms. Juarez's typing had improved, other aspects of her performance remained deficient. (12(*l*) Statement, ¶ 62.)

On January 5, 1987 Mr. Slavin informed Ms. Juarez that she was being terminated because her "performance consistently did not meet expectations." (12(*l*) Statement, ¶ 63.) On January 3, 1989 Ms. Juarez filed her complaint in this case.

Ms. Juarez brings Counts I and II of her four-count complaint under Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e ("Title VII"). Count I of the complaint alleges that AMCI is liable for the sexual harassment in the workplace caused by Mr. Shkrutz's misconduct. Count II avers that AMCI terminated Ms. Juarez in retaliation for her complaints of sexual harassment. Counts III and VI are pendent state law claims for invasion of privacy and intentional infliction of emotional distress, respectively.

## II. DISCUSSION

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In ruling on a motion for summary judgment the evidence of Ms. Juarez, the nonmovant, must be believed, and all justifiable inferences must be drawn in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). However, when confronted with a motion for summary judgment, if Ms. Juarez bears the burden of proof on a particular issue she may not rest on her pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Applying these standards, summary judgment must be granted in AMCI's favor on each count of Ms. Juarez's complaint.

### A. *Title VII Counts*

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e-2(a)(1). Ms. Juarez alleges that AMCI violated Title VII in two ways: (1) by allowing sexual harassment in the workplace; and (2) by firing Ms. Juarez in retaliation for reporting her sexual harassment.

### 1. Count I: Sexual Harassment in the Workplace

To succeed on her claim that AMCI is liable for sexual harassment in the workplace, Ms. Juarez must establish the following five elements:

(1) that she was a member of a protected class;

(2) that she was subjected to unwelcomed sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature;

(3) that the harassment complained of was based upon sex;

(4) that the charged sexual harassment had the effect of unreasonably interfering with her work performance by creating an intimidating, hostile, or offensive working environment that affected seriously her psychological well-being; and

(5) that AMCI is liable for the sexual harassment under the doctrine of respondeat superior.

*Swanson v. Elmhurst Chrysler Plymouth, Inc.*, 882 F.2d 1235, 1238 (7th Cir. 1989). AMCI correctly argues that Ms. Juarez cannot establish the fifth required element—that AMCI is liable for the actions of Mr. Shkrutz.

In *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 73, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986), the Supreme Court held that a claim of "hostile environment" sexual discrimination is actionable under Title VII. The Court refused, however, to impose strict liability upon employers for a hostile environment created by a supervisor's sexual advances. Instead, the Court ruled that courts must look to principles of agency for guidance in this area. *Id.*, 477 U.S. at 72, 106 S.Ct. at 2408. Said the Court:

[W]e hold that the Court of Appeals erred in concluding that employers are always automatically liable for sexual harassment by their supervisors. For the same reason, absence of notice to an

employer does not necessarily insulate that employer from liability. Finally, we reject petitioner's view that the mere existence of a grievance procedure and a policy against discrimination, coupled with respondent's failure to invoke that procedure, must insulate petitioner from liability. While those facts are plainly relevant, ... they are not necessarily dispositive.

*Id.*

Following the Supreme Court's lead by looking to principles of agency for guidance, the Seventh Circuit Court of Appeals has held that "an employer is liable for an employee's action if the employer knew or should have known about an employee's acts of harassment and fails to take appropriate remedial action." *Brooms v. Regal Tube Co.*, 881 F.2d 412, 421 (7th Cir.1989).

Moreover, the Seventh Circuit ruled that an employer's response to alleged instances of employee harassment must be "reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made." *Id.* Applying these standards it is evident that there remains no genuine issue of material fact that AMCI is not liable for Mr. Shkrutz's acts of sexual harassment.

First, there is no real dispute that AMCI neither knew nor should have known about Mr. Shkrutz's acts of harassment. Prior to the incident involving Ms. Juarez, Mr. Slavin, the AMI employee who supervised both Ms. Juarez and Mr. Shkrutz,[5] received no complaints of sexual harassment against Mr. Shkrutz. (12(*l*) and 12(m) Statements, ¶ 31.) Ms. Juarez was harassed by no other AMCI employee. (12(*l*) Statement, ¶ 11.)

In her deposition Ms. Bettendorf, AMCI's accounts payable supervisor, stated that she heard of four other instances of conduct involving Mr. Shkrutz which she considered to be sexual harassment. (Bettendorf Dep. at 25–26.[6]) However, Ms. Bettendorf had no idea whether these incidents had been reported either to Mr. Slavin or any employee in the AMCI human resources department. (*Id.* at 26.) Therefore, Mr. Bettendorf's testimony alone is insufficient to raise a genuine issue of material fact as to whether AMCI knew or should have known about Mr. Shkrutz's acts of harassment.[7]

Second, given the particular facts and circumstances of this case there is no doubt that AMCI's response to Ms. Juarez's allegations of harassment by Mr. Shkrutz was reasonably calculated to prevent further harassment. It is undisputed that AMCI had in place a detailed grievance procedure and a policy against sexual discrimination. (*See* 12(*l*) Statement, ¶ 32; Juarez Dep. Exhibits 55, 57.) Indeed, Ms. Juarez invoked that procedure by filing a complaint of sexual harassment with AMCI's director of human resources.

On the very same day that Ms. Juarez lodged her formal complaint of sexual harassment, Mr. McClelland, AMCI's director of human resources, began investigating the complaint by speaking with Ms. Bettendorf and Ms. Martinez about the situation. Two days later Mr. McClelland spoke directly with Mr. Shkrutz, confronting him with Ms. Juarez's specific allegations of sexual misconduct, many of which Mr. Shkrutz denied.

Nonetheless, within five days AMCI suspended Mr. Shkrutz for one week without pay because of his acts of sexual harassment. Ultimately, Mr. Shkrutz quit his job and moved to New York. After AMCI began its investigation, never again was Ms. Juarez sexually harassed by either Mr. Shkrutz or any other AMCI employee.

---

5. *See* 12(*l*) Statement, ¶¶ 3–4.

6. At her deposition the court reporter recorded Ms. Bettendorf's name as Kimieth Ruthford.

7. Ms. Juarez does not argue that Ms. Bettendorf's knowledge alone of these other incidents is sufficient to impute knowledge to AMCI. Indeed, Ms. Juarez has presented no evidence from which a rational trier of fact could conclude that notice to Ms. Bettendorf, an accounts payable supervisor with no apparent connection to AMCI's human resources department or management scheme, constitutes notice to AMCI itself.

With the benefit of hindsight one may quarrel with whether a one-week suspension was sufficient punishment given the extreme nature of Mr. Shkrutz's actions. However, when confronted with Ms. Juarez's allegations, Mr. Shkrutz denied some of them and insisted that his relationship with Ms. Juarez was "mutual." There can be no genuine dispute that AMCI's "total response [to Mr. Shkrutz's harassment] was reasonable under the circumstances *as they then existed.*" *Regal Tube,* 881 F.2d at 421 (emphasis added).

Therefore, because there is no genuine issue of material fact that AMCI neither knew nor should have known about Mr. Shkrutz's acts of harassment, and because once informed of his conduct AMCI took remedial action reasonably calculated to prevent further harassment, Ms. Juarez cannot prove that AMCI is liable for Mr. Shkrutz's actions. Summary judgment must be entered in AMCI's favor on Count I of Ms. Juarez's complaint.[8] *Cf. Long v. First Family Financial Services, Inc.,* 677 F.Supp. 1226, 1233 (S.D.Ga.1987); *Strickland v. Sears, Roebuck and Co.,* 693 F.Supp. 403, 406 (E.D.Va.1988), *aff'd without opinion,* 846 F.2d 74 (4th Cir.1988).

### 2. Count II: Retaliatory Discharge

Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has made a *charge,* testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. Section 2000e–3(a) (emphasis supplied). The following sequence of proof and burdens apply to retaliation cases under Section 2000e–3(a):

> Plaintiff first has the burden of establishing a prima facie case of retaliation. The burden then shifts to defendants to articulate a legitimate nondiscriminatory reason for the challenged action. If defendants make that articulation, the burden shifts back to plaintiff to prove that the defendants' proffered reason is a pretext for an underlying retaliatory reason.

*Collins v. Illinois,* 830 F.2d 692, 702 (7th Cir.1987).

To prove a prima facie case of retaliation, Ms. Juarez must make three showings: (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse action by her employer; and (3) that there is a causal link between the protected expression and the adverse action. *Id.*

As to the third showing, Ms. Juarez must show that AMCI would not have taken the adverse action "but for" her complaints of sexual harassment. *Klein v. Trustees of Indiana University,* 766 F.2d 275, 280 (7th Cir.1985). There is no genuine issue of material fact that Ms. Juarez cannot prove this final element—that there is a "but for" causal link between her complaints of sexual harassment and her termination.

Ms. Juarez argues that the nexus between her complaint and her termination "emerges from the fact the question of work performance was never at issue until after the complaint was made." (Pl. Mem. at 7.) However, the timing alone of complaints about Ms. Juarez's work performance is insufficient to defeat AMCI's motion for summary judgment. *Cooper v. North Olmsted,* 795 F.2d 1265, 1272 (6th Cir.1986).

Indeed, almost six months elapsed between the filing of Ms. Juarez's complaint and her termination. Although AMCI employees documented Ms. Juarez's poor work performance only after she filed her complaint, Ms. Juarez has presented no evidence from which a reasonable trier of fact could infer that the AMCI employees who evaluated her had a discriminatory motive to retaliate against her for her complaints of discrimination.[9]

---

**8.** Summary judgment also must be entered in AMCI's favor on Count I because, as the court explains in the next section, there is no genuine issue of material fact that AMCI did not discharge Ms. Juarez in violation of Title VII. *Bo-*

*hen v. East Chicago,* 799 F.2d 1180, 1184 (7th Cir.1986).

**9.** The only evidence which Ms. Juarez offers is her own deposition testimony that with regard to her work performance, she "felt that people

On the contrary, the undisputed facts demonstrate that Ms. Juarez's performance was deficient to the extent that she cannot demonstrate that she would not have been terminated but for her complaints of discrimination. At least four AMCI employees complained about Ms. Juarez's work performance. Two of these employees—Ms. Deswik–Dolik and Mr. Slavin—thoroughly documented Ms. Juarez's work deficiencies.

In response to these complaints, Mr. Slavin four times discussed Ms. Juarez's job performance with her. Twice he developed performance objectives designed to correct the performance problems Ms. Juarez was experiencing. After approximately five months of working with Ms. Juarez on her job performance and after expressly warning that she would be terminated if she failed to meet her performance expectations, AMCI finally terminated Ms. Juarez. (12(*l*) Statement, ¶ 60.)

Ms. Juarez does not dispute that she made mistakes in performing her duties at AMCI. (*See, e.g.,* 12(*l*) Statement, ¶ 41.) This admission, combined with Ms. Juarez's failure to present evidence raising a genuine issue of material fact regarding whether the AMCI employees who evaluated her were lying, leads ineluctably to the conclusion that AMCI would have fired her regardless of whether she had filed a complaint of discrimination.

Although reprehensible, sexual harassment does not entitle the victim to lifetime tenure at her place of employment. Because Ms. Juarez has failed to present evidence raising a genuine issue of material fact as to whether AMCI would have terminated her but for her complaints of sexual harassment, summary judgment must be entered in AMCI's favor on Count II of her complaint. *Cf. Cooper,* 795 F.2d at 1272–73.

Alternatively, even if Ms. Juarez had raised a genuine issue of material fact regarding all elements of her prima facie case, under the burden shifting calculus appropriate to retaliatory discharge claims, summary judgment nonetheless must be granted in AMCI's favor.

If Ms. Juarez had met her burden of establishing a prima facie case of retaliation, the burden would shift to AMCI to articulate a legitimate nondiscriminatory reason for terminating Ms. Juarez. Given the evidence of Ms. Juarez's inadequate work performance, AMCI has easily met this burden. *Ramsey v. Olin Corp.,* 39 F.E.P. Cases 959, 963, 1984 WL 929 (S.D.N.Y.1984).

Thus, the burden would shift back to Ms. Juarez to prove that AMCI's proffered reason is a pretext for an underlying retaliatory reason. To do this Ms. Juarez must focus on AMCI's specific reasons for taking the challenged employment action. *Klein,* 766 F.2d at 282. Specifically, Ms. Juarez must establish that a discriminatory reason more likely motivated AMCI in firing her. She must do this by presenting evidence "sufficiently substantial to show that, in addition to the defendant's proffered reasons, a discriminatory motive was a determining factor." *Id.*

As noted above, almost six months elapsed between the filing of Ms. Juarez's complaint and her termination. Moreover, as noted above, Ms. Juarez has presented no evidence suggesting that the AMCI employees who complained of her poor performance during this period had a motive to retaliate against her such that they would misrepresent her work performance.

In response to a motion for summary judgment Ms. Juarez must do more than simply "show there is some metaphysical doubt as to the material facts" of her case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct.

---

were criticizing and picking on little things, little things that they blew out of proportion and to get on paper." (12(m) Statement, ¶ 67; Juarez Dep. at 165.) However, Ms. Juarez offers no evidence substantiating her subjective belief that AMCI employees were unjustly criticizing her work performance. Indeed, given the number

and diversity of complaints about Ms. Juarez's performance from several AMCI employees none of whom have a demonstrable motive to distort the facts, Ms. Juarez's conclusory testimony raises no genuine issue that AMCI employees were retaliating against her.

1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted). Here, the undisputed facts substantiate AMCI's legitimate nondiscriminatory reason for discharging Ms. Juarez— her poor work performance. *Cf. Ramsey v. Olin*, 39 F.E.P. Cases at 962–64. Because Ms. Juarez has raised no genuine issue of material fact suggesting that a discriminatory motive was a "determining factor" in AMCI's decision to fire her, she cannot establish that AMCI's reason for firing her was pretextual.[10] This failure of proof provides yet another basis requiring entry of summary judgment in AMCI's favor on Count II of the complaint.

### B. *Pendent State Law Claims*

Summary judgment also must be entered in AMCI's favor on Ms. Juarez's pendent state law claims, which are governed by Illinois law.

#### 1. Count III: Invasion of Privacy

Summary judgment must be entered against Ms. Juarez on her count for invasion of privacy because it is untimely. Under Illinois law actions for alleged violations of a plaintiff's right of privacy must be commenced within one year after the cause of action accrues. *Ill.Ann.Stat.* ch. 110, ¶ 13–201 (Smith–Hurd 1984); *Starnes v. International Harvester Co.*, 184 Ill. App.3d 199, 132 Ill.Dec. 566, 570, 539 N.E.2d 1372, 1376 (4th Dist.1989).

■ It is undisputed that the sexual harassment on which Ms. Juarez bases Count III had ceased by July 14, 1986. (12(*l*) Statement, ¶ 30.) Ms. Juarez commenced this action on January 3, 1989— over two years later and long after the statute of limitations had run.[11]

Because it is barred by the statute of limitations, summary judgment must be entered in AMCI's favor on Count III of Ms. Juarez's complaint.

#### 2. Count IV: Intentional Infliction of Emotional Distress

Finally, summary judgment must be entered in favor of AMCI on Ms. Juarez's claim for intentional infliction of emotional distress. AMCI could be liable for Mr. Shkrutz's behavior either derivatively or directly. In this case, however, neither alternative affords Ms. Juarez relief.

■ If Ms. Juarez is seeking to find AMCI derivatively liable for Mr. Shkrutz's actions, the Illinois Workers' Compensation Act, *Ill.Ann.Stat.* ch. 48, ¶ 138.1 *et seq.* (Smith–Hurd Supp.1990) ("WCA"), preempts her claim. *Bailey v. Unocal Corp.*, 700 F.Supp. 396, 400 (N.D.Ill.1988); *Regal Tube*, 881 F.2d at 426.

On the other hand, if Ms. Juarez is seeking to hold AMCI directly liable for the tort of intentional infliction of emotional distress, she has failed to meet Illinois' very strict interpretation of what constitutes extreme and outrageous conduct. Specifically, Ms. Juarez has failed to present any evidence to convince a rational trier of fact that AMCI itself directed, encouraged, or committed extreme and outrageous conduct as to Ms. Juarez. *Bailey*, 700 F.Supp. at 400. Ms. Juarez's failure to raise a genuine issue of material fact as to such egregious conduct by AMCI results in preemption of Count IV by the WCA. *Id.*

Accordingly, summary judgment must be entered in AMCI's favor on Count IV of Ms. Juarez's complaint.

### III. CONCLUSION

Liability for Mr. Shkrutz's reprehensible behavior lies, if anywhere, not with AMCI, but with Mr. Shkrutz himself. Had Ms. Juarez's counsel been more diligent in serving Mr. Shkrutz with the complaint in a timely manner, Ms. Juarez may not now

---

10. Similarly, Ms. Juarez also has failed to raise a genuine issue of material fact as to the alternative showing—that AMCI's proffered reason for her discharge is unworthy of credence. *Klein*, 766 F.2d at 282.

11. Ms. Juarez asserts that the statute of limitations was tolled by her filing of a charge of discrimination with the EEOC. However, the court holds that the timely filing of a charge of discrimination with the EEOC does not toll the running of the Illinois statute of limitations applicable to invasion of privacy claims. *Cf. Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Waller v. International Harvester Co.*, 574 F.Supp. 166, 169 (N.D.Ill.1983).

have been left with a lawsuit without a defendant. Regardless of the actions of Ms. Juarez's counsel, however, under the law summary judgment must be entered in favor of AMCI.

Therefore, for the reasons stated in this memorandum opinion and order, AMCI's motion for summary judgment is GRANTED. Judgment is entered in favor of defendant AMCI and against plaintiff Anna Juarez on all counts of Ms. Juarez's complaint. This case is dismissed in its entirety.