**Joseph S. RAMIREZ, Plaintiff,**

v.

**Marvin T. RUNYON, Postmaster General, Defendant.**

**No. 96–4045.**

United States District Court, C.D. Illinois, Rock Island Division.

July 14, 1997.

Nile J. Williamson, Peoria, IL, for Plaintiff.

Gerard A. Brost, U.S. Atty., Peoria, IL, Deborah W. Carlson, U.S. Postal Service, Office of Field Legal Services, Chicago, IL, for Defendant.

### *ORDER*

MIHM, Chief Judge.

Before this Court are Plaintiff's Motion for Partial Summary Judgment [# 1 2] and Defendant's Motion for Summary Judgment [# 15]. For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's Motion for Partial Summary Judgment is DENIED.

### Background

In February 1989, Plaintiff, Joseph Ramirez ("Ramirez"), was employed as a full-time laborer/custodian, level 3, step C, at the Moline, Illinois Post Office. On February 17, 1989, Ramirez filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that officials at the Moline Post Office had discriminated against him. (Defendant's Exhibit C at 8). Ramirez and the Moline Post Office entered into a settlement agreement on September 19, 1989, which resolved his complaint. *Id.* at 8–9. The agreement provided, *inter alia;*

> Effective September 23, 1989, Mr. Ramirez will be reinstated as a full time Laborer Custodial [sic], Level 3 Step C at the East Moline, Illinois Post Office. Mr. Ramirez will not nerve a new probationary period. Mr. Ramirez's work schedule will be 5:00 a.m. to 2:00 p.m. with Sunday/Wednesday as non-scheduled days. Mr. Ramirez's seniority will be adjusted showing a starting date of November 24, 1984. Mr. Ramirez will receive $1000.00 backpay and attorneys [sic] fees will be paid through the effective date of this signing.

(Plaintiff's Exhibit 1).

Pursuant to this settlement agreement, Ramirez began working at the East Moline Post Office on September 23, 1989. (Defendant's Exhibit A at 36). No officials of the East Moline Post Office were involved in the alleged discrimination, nor were they named in the 1989 EEO complaint. (Defendant's Exhibit C at 8).

On November 16, 1989, Ramirez submitted a letter to Don Greeno ("Greeno"), then Postmaster of the East Moline Post Office, requesting a change in his work schedule from his 5:00 a.m. to 2:00 p.m. shift to a 6:00 a.m. to 3:00 p.m. shift. (Defendant's Exhibit A at 35). He also requested that his days off be changed from Sunday and Wednesday to Sunday and Thursday. *Id.* The letter stated the reason for the requested schedule changes was the concomitant convenience to both himself and the East Moline Post Office. *Id.* Greeno agreed to the requests, and Ramirez's schedule was changed accordingly. (Defendant's Exhibit C at 9).

Thereafter, Greeno was replaced, and for a brief period in early 1 1993, Jan McDonald ("McDonald") served as Acting East Moline Postmaster. *Id.* Soon after his arrival, McDonald proposed changing Ramirez's hours. *Id.* However, Ramirez informed McDonald of the 1989 settlement agreement, and no change was ultimately made. *Id.* at 9–10.

John Cooke ("Cooke") became the new Postmaster of the East Moline Post Office in April 1993. (Defendant's Exhibit C at 9). Before his appointment, Cooke had been postmaster of the Oelwein, Iowa Post Office and had never worked at the Moline, Illinois Post Office. (Defendant's Exhibit B at 80–83, 121–23).

Shortly after his arrival, Cooke questioned the purpose of having two full-time custodians at such a small poet office. (Defendant's Exhibit C at 10). After some investigation, Cooke discovered that Ramirez had been placed at the East Moline Post office pursuant to a 1989 EEO settlement agreement with another post office. *Id.* Thereafter, Cooke advised Richard Dollins ("Dollins"), Cooke's supervisor of postal operations, that he wanted the two custodians scheduled in a way which would provide custodial coverage of the post office from 4:30 a.m., when the building opened, until 6:00 p.m., when the building closed. *Id.* at 10. Cooke contended that he wanted to make the scheduling change because the facility did not "gleam" as it should with two full-time custodians. (Defendant's Exhibit B at 125). According to Cooke, rearranging the custodians' schedules to provide complete coverage of the

building during the office's operational hours would increase the effectiveness of the custodial services.

At that time, Ramirez's hours were 6:30 a.m. to 3:00 p.m. weekdays, and 5:00 a.m. to 1:30 p.m. on Saturday. The other custodian, Dennis Johnson ("Johnson"), who had more seniority, worked from 4:00 a.m. to 1:00 p.m. (Defendant's Exhibit C at 10–11; Defendant's Exhibit B at 124–25, 137–40, 145). Accordingly, Cooke proposed changing Ramirez's work hours from 9:30 a.m. to 6:00 p.m., but Ramirez refused to agree to this change and cited the 1989 settlement agreement. (Defendant's Exhibit C at 10; Defendant's Exhibit B at 94–96).

For guidance on this matter, Cooke consulted with David Hash ("Rash"), a labor relations specialist, and Deborah Dennis ("Dennis"), a senior EEO complaints processing specialist with the EEOC. (Defendant's Exhibit C at 10). They advised Cooke that the 1989 settlement agreement guaranteed Ramirez a job at East Moline but did not prohibit changing his hours and schedule to fit the operational needs of the facility. (Defendant's Exhibit B at 94, 98). Cooke also learned that the hours Ramirez was currently working had been changed at his request from the hours set forth in the 1989 settlement agreement. (Defendant's Exhibit B at 143–45).

On May 20, 1993, pursuant to a collective bargaining agreement, Cooke posted a request for bids for a new custodian position with the hours of 9:30 a.m. to 6:00 p.m. with Sunday/Thursday as non-scheduled days. (Defendant's Exhibit C at 10–11). The position with the hours of 6:30 a.m. to 3:00 p.m., which Ramirez had been working, was abolished. *Id.* at 11.

Ramirez and Johnson, as the only custodians at the East Moline Post Office, were the only employees eligible to bid on the position. Johnson, who had more seniority than Ramirez, chose to remain in his 4:00 a.m. to 1:00 p.m. work shift. *Id.* No bids were received for the other position. *Id.* Thus, over his objections Ramirez was assigned to the new position effective May 29, 1993. *Id.* In new position, Ramirez's duties remained the same, and his salary level was not affected. (Declaration of Deborah J. Dennis at 2). In fact, Ramirez's salary increased from $30,455 to $34,197 since the date of the schedule change in May 1993. *Id.*

A grievance was filed with the postal worker union on Ramirez's behalf; however, the union refused to pursue the grievance. (Defendant's Exhibit B at 51–52). It was dropped at the local level because the union found that the job posting conformed with the collective bargaining agreement and was procedurally correct. *Id.* On September 9, 1993, Ramirez filed a formal EEO complaint, alleging his work hours were changed by Cooke in retaliation for his prior EEO complaint. (Defendant's Exhibit A at 22–23). On October 13, 1993, the Postal Service accepted the retaliation issue for investigation, (Defendant's Exhibit A at 29), and the complaint was processed in accordance with 29 C.F.R. § 1614.108 [1],

Following the EEO investigation, Ramirez requested a hearing before an EEOC Administrative Law Judge ("ALJ"). (Defendant's Exhibit A, letter dated February 10, 1994 from Melissa Uzzell, Ramirez's previous attorney, to Dennis). Margaret Lee Herbert, the EEOC ALJ assigned to the case, determined that the sole issue of the complaint was retaliation. (Defendant's Exhibit F at 8–7). Ramirez did not object to the ALJ's characterization of the issue.

On August 4, 1994, the ALJ issued a recommended decision, finding that Ramirez

---

1. Title 29 C.F.R. § 1614.108 provides:
   (a) The investigation of complaints shall be conducted by the agency against which the complaint has been filed.
   (b) In accordance with instructions contained in Commission Management Directives, the agency shall develop a complete and impartial factual record upon which to make findings on the matters raised by the written complaint. Agencies may use an exchange of letters or memoranda, interrogatories, investigations, fact-finding conferences or any other fact-finding methods that efficiently and thoroughly address the matters at issue. Agencies are encouraged to incorporate alternative dispute resolution techniques into their investigative efforts in order to promote early resolution of complaints.
   29 C.F.R. § 1614.108.

failed to prove by a preponderance of the evidence that his assignment was changed in reprisal for engaging in protected activity. (Defendant's Exhibit C at 5, 24–25). The ALJ concluded that it was not necessary for her to determine whether the settlement agreement was still in effect, whether it had guaranteed Ramirez a specific set of hours, whether Ramirez's request in November 1989 to have his hours and schedule changed caused modification or waiver of the settlement agreement, or whether the agreement had been breached. (Defendant's Exhibit C at 24).

The Postal Service issued its final agency decision affirming the EEOC finding of no retaliation on August 30, 1994. (Defendant's Exhibit D). Ramirez appealed the final agency decision to the EEOC's Office of Federal Operations ("OFO") in Washington, D.C. The OFO issued its final decision on April 17, 1996, finding that the Postal Service did not retaliate against Ramirez. Further, the OFO determined that the ALJ correctly determined that Ramirez was not alleging breach of the 1989 EEO settlement agreement but, rather, was alleging that the violation of the agreement was in retaliation for that prior EEO activity. (Defendant's Exhibit E at 1–2, n. 1).

On May 6, 1996, Ramirez filed his one-count Complaint with this Court, alleging that his bid assignment was abolished and he was given a new work schedule in retaliation for prior EEO activity. In an Amended Complaint, filed on September 19, 1996, he added Count II, alleging that the Postal Service breached the 1989 settlement agreement when it changed his work hours.

## Discussion

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party may meet its burden of showing an absence of material foots by demonstrating

"that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554.. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Cain v. Lane,* 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553. This Court must then determine whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson,* 477 U.S. at 249–51, 106 S.Ct. at 2511.

### I. *Retaliation*

■ To establish a prima facie case of retaliation under Title VII, 42 U.S.C. § 2000e–3(a), Ramirez must show that: (1) he engaged in protected opposition to Title VII discrimination or participated in Title VII proceedings; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *Dey v. Colt Construction & Development Co.* 28 F.3d 1446, 1457 (7th Cir.1994). *See also Ashkin v. Time Warner Cable Corp.,* 52 F.3d 140, 143 (7th Cir.1995); *Samuelson v. Durkee/French/Airwick,* 976 F.2d 1111 (7th Cir. 1985). Ramirez has the burden of proving that "but for" his prior EEO activity, the adverse action would not have occurred, *Juarez v. Ameritech Mobile Communications,* 746 F.Supp. 798, 804 (N.D.Ill.1990).

As evidenced by his 1989 EEO complaint and settlement agreement. Ramirez en-

gaged in opposition to Title VII discrimination and participated in Title VII proceedings. Accordingly, Ramirez meets the first prong of the three-pronged prima facie retaliation test.

Under the second prong, whether or not Ramirez suffered an adverse employment action by having his work schedule changed against his wishes is debatable. However, even assuming for purposes of resolving these motions that Ramirez did suffer an adverse employment action, his Motion for Summary Judgment still fails because he has not demonstrated any causal connection between the protected activity and purported adverse employment action.

To establish a causal link between the protected activity and adverse action, a plaintiff must provide evidence that he suffered an adverse consequence shortly after his protected activity. *See Zorn v. Helene Curtis, Inc.*, 903 F.Supp. 1226, 1250 (N.D.Ill.1995). *See also Khouri v. Frank Cuneo Hospital*, No. 88 C 4553, 1990 WL 19888 (N.D.Ill. February 22, 1990) (eight-month gap between protected EEO activity and discharge insufficient to infer causal link); *Maldonado v. Metra*, 743 F.Supp., 563, 568 (N.D.Ill.1990) (five-month lapse between protected activity and adverse action, standing alone, not temporally close enough to prove causal link); *Juarez v. Ameritech Mobile Communications, Inc.*, 746 F.Supp. 798, 804 (N.D.Ill. 1990) (six month gap between employee's complaint and termination too attenuated to satisfy required temporal connection). A close temporal connection between protected activity and the adverse action "is generally enough to satisfy the third element of the prima facie test;" however, as the temporal distance between the two events increases, the likelihood of a casual link decreases, *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 797 (7th Cir.1997).

In the case at bar, Ramirez claims that there was only a three-week lapse in time between his protected action and the adverse employment action of the Postal Service. (Plaintiff's Memorandum In Support of Motion for Partial Summary Judgment at 5). However, Defendant argues that the time lapse between the protected action and adverse action was four years. The explanation for the conflicting time frames is the parties' different interpretations of what event constituted the protected Title V activity. Ramirez asserts the projected activity arose in late April of 1993 when he advised Cooke that he wished to have his EEO settlement order enforced. In this scenario, the adverse employment action, which was the May 20, 1993 posting of Ramirez's job, would have occurred approximately three weeks after the protected activity. Alternative if one concurs with Defendant and uses the 1989 settlement agreement as the protected Title VII activity, the applicable time frame would be four years.

This Court finds that under the only reasonable interpretation of the facts, Ramirez's 1989 EEOC complaint and settlement agreement constitutes the protected activity. Based on this conclusion, there was a time lapse of four years between the protected activity and the purported adverse action. As the cases cited above indicate, a time lapse of four years well exceeds the time frame necessary to demonstrate a causal link.

█ Moreover, even if Ramirez could establish a prima facie case, there is no evidence that Cooke used the schedule change as a pretext for retaliation. In order to show pretext, a plaintiff must present either direct or circumstantial evidence that a discriminatory reason motivated the employer's decision. *Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1310 (7th Cir.1997). Furthermore, an employment decision, even if ill-considered or ill-informed, will not show pretext if the employer's reasons were honestly relied upon. *Pollard v. Rea Magnet Wire Co. Inc.*, 824 F.2d 557, 559 (7th Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). As set forth in the following paragraphs, the evidence before the Court supports Defendant's contention that Cooke was not motivated by any intent or desire to retaliate against Ramirez for his 1989 EEO activity.

Before Cooke became the Postmaster at the East Moline Post Office, he had never worked at the Moline Post Office, nor is there any indication that he had known any

of the Moline officials against whom Ramirez's EEO complaint was directed. Additionally, Cooke was not involved in any way in resolving Ramirez's 1989 complaint. In fact, Ramirez had been working et the East Moline Post Office for four years prior to Cooke's arrival.

The record also reflects that Cooke did not act in a vacuum but, rather, sought guidance from those who were responsible for the 1989 settlement to ensure that the schedule change did not infringe on the terms of the agreement. According to Rash and Dennis, the labor specialists who investigated Ramirez's 1989 discrimination complaint and provided Cooke with guidance in this matter, while the agreement secured Ramirez a position at the East Moline Post Office, it did not provide any guarantee of specific work hours. Thus, Cooke was apparently free to change Ramirez's work schedule to facilitate the operational needs of the office.

Finally, the Court notes that the postal worker union did not pursue a grievance on Ramirez's behalf after determining that Cooke had taken the proper course of action under the provisions of the collective bargaining agreement.

After a thorough review of the record before the Court, Cooke's actions appear to be nothing more than a situation in which an incoming administrator, relying on his 20 years of Postal Service experience, devised a more efficient way of operating the building than had been done in the past. Increasing efficiency is something for which Cooke should be commended, not burdened by a lawsuit. The record is simply devoid of any evidence that Cooke used the change in scheduling as a pretext for retaliation or that he was influenced in any way by officials at the Moline Post Office, from which Ramirez transferred. Ramirez has failed to set forth sufficient facts from which any trier of fact could reasonably conclude that Cooke's stated reasons for the shift change were pretextual. Thus, Ramirez's Motion for Partial Summary Judgment regarding Count I is denied, and Defendant's Motion for Summary Judgement as to Count I is granted.

## II. *Breach of Contract*

■ Ramirez amended his Complaint on September 19, 1996, adding Count II and alleging that the Postal Service breached the 1989 settlement agreement when it changed his work hours. The terms of the settlement agreement were previously set forth in the Background section of this Order.

According to 29 C.F.R. § 1614.504(a):

Any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties. A final decision that has not been the subject of an appeal or a civil action shall be binding on the agency. If the complainant believes that the agency has failed to comply with the terms of a settlement agreement or final decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. The complainant may request that the terms of the settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased.

29 C.F.R. § 1614.504(b).

If the complainant is not satisfied with the agency's resolution of the matter, he or she may then appeal "to the Commission for a determination as to whether the agency has complied with the terms of the settlement agreement or final decision." 29 C.F.R. § 1614.504(b).

Although Ramirez filed a complaint with the EEOC and alleged retaliation several times during the EEO administrative process, he flatly denied that he was proceeding under a breach of contract theory. However, he now wants to proceed in district court on what he styles as a breach of contract claim. It is clear that Ramirez actually seeks enforcement of this 1989 settlement agreement rather than a ruling on a breach of a common law contract. Ramirez has not exhausted his administrative remedies with respect to his claim before seeking relief in federal court, Allowing Ramirez to raise his

claim in district court before exhausting the administrative process would defeat the goal of reducing duplicative litigation and providing a formal process to effect compliance. Further, the Sixth and Ninth Circuits have held that an employment contract negotiated as a result of an EEO complaint could not be enforced for breach of contract until all title VII administrative remedies have been exhausted. *See Blank v. Donovan,* 780 F.2d 808 (9th Cir.1986).

While the Seventh Circuit has not expressly addressed this precise issue, there is language in its decision in *E.E.O.C. v. Liberty Trucking Co.,* 695 F.2d 1038 (7th Cir.1982), which seems to indicate that this Circuit would agree with the position taken by the Sixth and Ninth Circuits. In *Liberty Trucking Co.,* where the EEOC brought quit against an employer who was seeking enforcement of an agreement entered into by the employer and one of its employees, the district court dismissed the case for lack of subject matter jurisdiction. *Id.* at 1039. On review, the Seventh Circuit reversed. *Id.* The case at bar, however, is distinguishable from *Liberty* in that after the employer in that case breached the agreement, all procedural avenues available for resolving the matter at the administrative level appear to have been exhausted. *Id.* at 1040. Specifically, the Court noted, "The EEOC's attempts to resolve the matter ... were unsuccessful." *Id.*

Here, Ramirez never exhausted the procedural possibilities regarding his breach of contract claim and instead raised his claim for the first time in this Court. The Court adopts the reasoning of the Sixth and Ninth Circuits and finds that Ramirez must exhaust the EEOC's established processes before seeking relief in this Court.

This Court finds that the record as a whole fails to show sufficient facts from which a reasonable jury could find in favor of Ramirez. Neither direct nor circumstantial evidence buttresses his claim of retaliation, and he has failed to exhaust the available administrative remedies with respect to the breach of contract claim. Accordingly, the Court finds no genuine issue of material fact requir-ing resolution by a jury, and Defendant's Motion for Summary Judgment is granted.

### Conclusion

For the reasons set forth above, Ramirez's Motion for Partial Summary Judgment [# 12] is DENIED, and Defendant's Motion for Summary Judgment [# 15] is GRANTED. This matter is terminated.